[No. 412.    Decided March 16, 1892.]

ALEXANDER ISAACS, SAMUEL ISAACS AND MORRIS ISAACS, *Respondents*, v. S. J. HOLLAND AND SAMUEL S. LOEB, *Appellants*.

LANDLORD AND TENANT—LEASE OF COMMUNITY PROPERTY—VALIDITY —PLEADING—DEFECTS SUBJECT TO MOTION—CONSTRUCTION.

Where a husband executes a lease of community lands, and the tenant enters under the lease not knowing that the lands are community property, he can only avoid the performance on his part of the terms of the lease by first demanding a valid lease, and by surrendering the premises in case of a refusal to give him one.

In an action to recover rent under a lease, an answer substantially alleging that it was conceded by all parties that the lease was void, that defendants surrendered the premises to the plaintiffs, that a new agreement was made to occupy at a fair and reasonable rental, and that defendants re-entered thereunder, is not obnoxious to demurrer, but the frivolous and redundant matter in the answer and its uncertainty can only be reached by motions to strike or to make more certain.

Under Code 1881, § 94, pleadings must be liberally construed, with an aim to arrive at substantial justice between the parties, and it is no longer the rule that a pleading must be most strongly construed against the pleader.    (HOYT and STILES, JJ., dissent.)

*Appeal from Superior Court, Pierce County.*

The facts are stated in the opinion.

*John C. Stallcup*, for appellants.

*Doolittle & Fogg*, for respondents.

The opinion of the court was delivered by

Scott, J.—Respondents brought suit to recover two
months' rent, amounting to $1,000, which they claimed
to be due them from appellants, the defendants below, by
virtue of a certain lease of a lot and building thereon, in
the city of Tacoma. The lease was executed in due form
on the 6th day of July, 1889, to take effect on the first day
of September following, and to continue for the period of
five years. The defendants went into possession of the
premises thereunder and continued to hold the same, and
paid the stipulated rent therefor, $500.00 per month, until
the month of August, 1891, at which time they refused to
pay the rent any longer, and the respondents subse-
quently brought this action to recover the rent due for
the months of August and September. The defendants
in their answer alleged that the plaintiffs were married
men, and set up the necessary facts to show that the
property leased was at all the times specified community
property of the plaintiffs, and their said wives, and
alleged that said purported lease was void because the
same had not been executed by the wives of the plaintiffs.

Appellants contend that by reason of the premises stated
no action could be maintained on the lease, and cite *Hoover
v. Chambers,* 3 Wash. T. 26 (13 Pac. Rep. 547), and *Hol-
yoke v. Jackson,* 3 Wash. T. 235 (13 Pac. Rep. 841), in
support of their position. While possibly there may be
something said in the opinions rendered in those cases
which would in a measure justify this contention, yet the
facts here are so essentially different from the facts in
either of those cases that we do not regard them as appli-
cable. In the first case suit was brought to compel the
husband to execute a lease of community lands in compli-
ance with an agreement made by him. The wife was not
a party to the agreement, and the court refused to compel
the execution of the lease on the ground that the husband

had no power to lease community lands. The last case was an action brought to compel the specific performance of a contract entered into by the husband to sell community real estate or for damages. It was subsequently resolved into an action for damages only. The defense set up was that the contract was made without the knowledge and against the will of the wife, and that she refused to join in the sale. The plaintiff knew of the marriage relation, and that the wife had not consented to the sale, and that it was community property. The money which had been paid was tendered back with interest, and it was decided that the plaintiff was not entitled to the relief demanded.

In the case at bar the wives of the plaintiffs have at no time appeared upon the scene, nor did they in any manner interfere with the defendants' use and enjoyment of the property. The lease contained the following covenant:

"And the said parties of the first part covenant that the said parties of the second part, on paying the said monthly rent, and performing the covenants aforesaid, shall and may peaceably and quietly have, hold and enjoy the said demised premises for the term aforesaid."

While the husbands could not execute a valid lease of community lands, we do not think this lease was absolutely void. If the defendants had been ousted we see no good reason why they could not have maintained an action for damages upon the breach of the covenant for quiet enjoyment. It does not appear that they knew the plaintiffs were married men, or knew the property was community property when the lease was executed, so that it could be contended they stood in the position of willful violators of the law.

We are satisfied the defendants could not avoid the performance of the terms of this lease upon their part without first demanding a valid lease from the plaintiffs, and it does

not appear that they did this.   We are also of the opinion
that where a husband executes a lease of community
lands, thereby undertaking to exercise a power that the
law does not vest in him, and in violation of the law, the
tenant who has taken the lease not knowing that the
lessor was a married man, or that the land purported to
be leased was community property, or if knowing it, hav-
ing falsely been led to believe that the husband had
authority to lease the same, upon learning the facts should
be permitted to demand a valid lease, and if refused him
to then abandon the premises if he has taken possession,
and not be held bound to pay the rent after such de-
mand, refusal and surrender.   It was conceded upon the
argument of this case that these tenants were occupying
the property in question for the purposes of trade.   A
mercantile business if successful usually becomes more
valuable with the lapse of time, and in becoming estab-
lished in a permanent location, a considerable time may
be required in which to establish a business, and make it
profitable, and at the commencement and for more or less
time thereafter it may well be a source of expense rather
than profit, and the profit only be derived after continu-
ing therein a sufficient length of time to become known
and established.   The continuance in one location would
ordinarily be an important factor in arriving at this result,
and certainly one who has leased premises under such cir-
cumstances for a long period of time, not knowing the facts
so that he himself would stand in the position of a wrong-
doer, should not be compelled to continue therein and lay
out money at his peril or at a loss with the prospect of
having his business sacrificed after establishing it at the ex-
pense of time and money, by being ejected from the prem-
ises by the owners, or that after a demand for a valid lease
and a refusal to give one, that he should be compelled to
remain in possession until notified to quit or proceedings
should be instituted to eject him.   An estoppel might arise

against the wives upon learning the facts unless they in due time made some effort to obtain possession, but the tenant should not be compelled to wait for this to develop. If, however, the tenant knowing the facts should continue to occupy the premises he could not set up the invalidity of the lease as a defense to an action for the recovery of the rent stipulated, and this brings us to the consideration of a further question involved in the determination of this case. The answer contained the following allegation:

"These defendants allege that they occupied the said premises from month to month and paid the rental demanded each month therefor, until the month of August, 1891, when it was conceded by all the parties hereto, that said pretended lease agreement was void and of no effect; and these defendants refused to pay the rental demanded for the said month of August, and offered to surrender up said premises to plaintiffs; whereupon the plaintiffs requested these defendants to continue to occupy the said premises from month to month at a rental of $400.00 per month, which these defendants refused to do, but offered to pay the sum of $300.00 per month rental for the said month of August, and for each month of the time they should occupy said premises, which was refused on the part of said plaintiffs; thereafter on the 24th day of said month of August, these defendants *surrendered to said plaintiffs the said premises;* whereupon the said plaintiffs requested these defendants to occupy the said premises from month to month at a fair and reasonable rental, which these defendants consented to do, and accordingly *re-entered* and made new arrangements, and have since accordingly held the same; that thereafter the said plaintiffs claimed and insisted that $400.00 per month was a fair and reasonable rental for the said premises; well knowing that $300.00 per month was a full, fair and ample rental therefor; that this unreasonable demand was not in good faith but was unjustly made for the reason, as defendants are informed and believe and so allege, that the said plaintiffs knew that it would be of great damage to these defendants to *again surrender* the premises."

The plaintiffs demurred to the answer on the ground that it did not contain facts sufficient to constitute a defense. The court sustained the dumurrer, and the defendants appealed. The respondents contend that the answer is frivolous, evasive and uncertain, and states only conclusions of law, and that the demurrer was rightly sustained. They contend that as a matter of fact the premises never were given up, and that there was no new or other agreement between the parties, and argue that there is a studied attempt upon the part of the pleader to come as near alleging a yielding up of the premises, and a subsequent agreement to re-let as is possible without actually saying so in the answer, which under our practice has to be verified, and they insist that this bad faith upon the part of the pleader is apparent from the answer itself. We cannot arrive at this conclusion. The answer contains some superfluous matter, but this can only be reached by a motion; it is not one of the defects for which a demurrer will lie. The statute, § 85 of the 1881 Code, is as follows:

"Sec. 85. Sham, frivolous and irrelevant answers and defenses may be stricken out on motion, and upon such terms as the court may in its discretion impose."

And § 95 provides:

"If irrelevant or redundant matter be inserted in a pleading it may be stricken out on motion of any person aggrieved thereby; and when the allegations of a pleading are so indefinite or uncertain that the precise nature of the charge or defense is not apparent, the court may require the pleading to be made definite and certain by amendment, or may dismiss the same."

As to the rule of construction to be recognized, § 94 provides that: "In the construction of a pleading for the purpose of determining its effect, its allegations shall be liberally construed." All prior forms of pleading were abolished by the code, and it prescribed what they should be thereafter, and also the rule by which their sufficiency

should be determined. In *Chambers v. Hoover,* 3 Wash.
T. 110, in speaking of the complaint in that case, to which
a demurrer had been interposed, TURNER, J., says:

"The averments of this pleading are vague and indefi-
nite, and it is defective in other respects; yet, when
bolstered by the rule of liberal construction commanded
by the code, we think we discern a cause of action. A
suitor is no longer to be turned out of court, if by making
all reasonable intendments in his favor enough can be
seized hold of in his pleadings to show that he has rights
which ought to be enforced. He may be required on mo-
tion to conform his statement to the rules of good plead-
ing, and if he refuse, may be turned out of court; but as
against a demurrer, the office of which is to raise a sub-
stantial issue on the law of the case, and not on the law
of practice and pleading, evidentiary facts, and even in-
ferences from averments amounting to mere conclusions
of law, will be considered in his favor."

In *Trustees v. Odlin,* 8 Ohio St. 296, under very simi-
lar statutory provisions, SWAN, J., in rendering the opinion,
said:

"The sufficiency of pleadings, under the code, as to cer-
tainty, precision, definiteness and consistency of allegation,
and indeed in respect of every other variety of defect of
allegations which does not amount to such an absolute
omission of fact as to constitute no ground of action or de-
fense, must be taken advantage of or objected to by motion
under the above provision of the code, and can afford no
ground for demurrer or assignment of error.
"If pleadings shall be in ordinary language, as contra-
distinguished from legal technical language, they must be
construed as meaning what is generally understood by
ordinary language, and hence there can be no established
technical mode of stating a cause of action or defense. So,
too, the rules of the common law as to the sufficiency of
pleadings, are abrogated, and in their place is substituted
the few and simple rules of the code."

See *People v. Ryder,* 12 N. Y. 433; *Slattery v. Hall,* 43
Cal. 191.

Under our practice the old rule that a pleading must be most strongly construed against the pleader is not recognized. It must be liberally construed with an aim to arrive at substantial justice between the parties. This answer alleges that it was *conceded by all the parties that the lease was void;* that they *surrendered the premises* to the plaintiffs; that a *new agreement was made* to occupy at a fair and reasonable rental, and that *they re-entered thereunder.* This alleges more than is really necessary to constitute a defense. An agreement setting aside this lease, and the making of a new agreement would be sufficient without actually vacating the premises and moving in again under the new arrangement. See 2 Wood, Landlord and Tenant, 1102; 12 Amer. and Eng. Enc. of Law, 758 h. title, "Surrender by Agreement," and authorities cited; *Enyeart v. Davis,* 17 Neb. 228 (22 N.W. Rep. 449). And it is immaterial whether the words surrendered and re-entered mean an actual moving out of the premises and moving in again, or not. Respondent contends that they are mere conclusions of law, and that the pleader should have stated the facts. We have already seen that a demurrer would not reach such a defect. But we do not agree with his view of this answer. When the defendants allege that they surrendered the premises we think it means that they abandoned them and yielded up the possession thereof, especially when taken in connection with the clause that they re-entered under another agreement with the plaintiffs. This looks to us like a plain and concise statement of facts, not even obnoxious to a motion. If the statement that the lease was conceded by all the parties to be void and that the defendants gave up the possession of the premises thereunder; and that a new agreement was made between the parties, under which they re-entered, needed any further support it can be found as against this demurrer in the evidentiary matter pleaded, wherein it is alleged that the plaintiffs, subsequent to the

making of the new agreement, insisted upon the sum of $400 a month as a reasonable rental; that this was too large a sum, and that the plaintiffs knew it to be so, but made the demand therefor because they knew it would be of great damage to the defendants to *again surrender the premises.*

The judgment is reversed, and the cause remanded for further proceedings.

ANDERS, C. J., and DUNBAR, J., concur.

HOYT, J. (*dissenting*).—I am unable to agree with the rule for the construction of pleadings laid down by the majority of the court. It seems to require all the intendments to be brought to the aid of a pleading, when seasonably attacked by demurrer, that would attach after verdict. That such was not the rule at common law is so well settled that it is not necessary to argue the question. It is claimed, however, that this difference of construction has been abrogated by our statute. The provisions of our statute are substantially the same as those of the other code states, and I do not think that such provisions should be construed as going to the extent thus contended for. The rule laid down by the majority of the court is, in my opinion, against public policy, and should not be held to obtain unless such construction of the statute is absolutely necessary. Such rule, once established and understood, would have a direct tendency to encourage a careless and slipshod method of pleading. There would no longer exist any motive for accuracy and clearness of statement on the part of the pleader. In fact, the more blind and uncertain a pleading could be made, the safer it would be for the pleader; for if his pleading is attacked by demurrer, it would be the duty of the court, in the light of the argument had upon the question, to so interpret every ambiguous or uncertain expression as to sustain the pleading,

rather than to defeat it. The pleader can thus get the benefit of the argument of the other side and of the judgment of the court to guide him in determining what he shall claim for his pleading, instead of having himself to show clearly by the language used what he claims. There is much reason for the application of such rule when applied to the construction of pleadings after verdict. It is highly proper and necessary at that stage of the case that every intendment should be in favor of the pleading; otherwise, the opposite party could lie in wait and get the benefit of the chances of a decision of the jury in his favor, with the right, after such decision, to attack the same, if against him, upon some ambiguity or uncertainty in the pleading. This if allowed, would so tend to manifest injustice that the courts from an early day laid down such a rule as effectively prevented such a course by a party to an action; but when the pleading is attacked seasonably by demurrer, it seems to me that public policy demands, as well as the rights of the parties require, that the pleader should then resolve all ambiguous or uncertain expressions into certainties, and be required to advise the opposite party just what he means by the language used. There are numerous provisions of our statute bearing upon this question, but taken altogether, I think they simply require that all pleadings should be liberally construed and force given to the evident intent of the pleader, regardless of technical accuracy of statement, but that it does not follow therefrom that doubtful or uncertain expressions are to be tolerated, or that the same are to be sustained by every possible intendment, if the other party at the earliest opportunity asks that these doubtful expressions be made certain, and that the pleader show what he intends.

The State of New York, as the original code state, is largely relied upon as a guide in determining to what extent the rules of the common law have been changed by

code provisions. The code provisions of that state are substantially the same as ours, yet the courts there have continued to recognize the difference of construction which properly obtains before and after verdict. See *White v. Spencer*, 14 N. Y. 247; *St. John v. Northrup*, 23 Barb. 26. I think the judgment should have been affirmed.

STILES, J., concurs.