## SOMMER v. CARBON HILL COAL CO.

(Circuit Court of Appeals, Ninth Circuit. May 20, 1898.)

No. 412.

1. MASTER AND SERVANT — NEGLIGENCE OF MASTER— STATUTE REGULATING MINING.

A mining statute prescribing the measures that shall be taken by the operators of coal mines to insure ventilation and the safety of the miners changes the general duty imposed by law upon a master to provide a reasonably safe place for the servant to work, into a specific duty to do the things required, a failure to perform which is negligence; and such duty cannot be delegated to a servant so as to relieve the master from liability for injuries caused to another servant by its omission.

2. SAME—ACTION FOR INJURIES—PLEADING.

A complaint alleging that plaintiff, a coal miner, on discovering gas at the place where he was working, notified the employé of defendant in charge of the ventilation of the mine, and afterwards, supposing that the latter had taken measures to remove the gas, returned to work, and, in the performance of his work in the usual manner, lighted a match, causing an explosion of gas, by which he was injured, is not demurrable as disclosing contributory negligence; it not appearing how long plaintiff remained away from work after giving notice, nor what reasons existed for believing the gas to have been removed.

3. PLEADING—CONSTRUCTION—EFFECT OF STATUTE.

Under a Code provision requiring the liberal construction of pleadings, every reasonable intendment and presumption is to be indulged in favor of a pleading when attacked by demurrer.

In Error to the Circuit Court of the United States for the Western Division of the District of Washington.

This writ of error is sued out to review the action of the court below in sustaining a demurrer to the amended complaint filed in the case. The assignments of error raise the question whether the amended complaint states facts sufficient to constitute a cause of action. The complaint, as amended, alleges: That the defendant is a corporation organized under the laws of California, and doing business in Pierce county, Wash. That it owns and operates a coal mine known as the "Carbon Hill Coal Mine," situated in Pierce county, Wash. That the plaintiff was for a period of about eight years prior to and including the 22d day of June, 1896, in the employ of the defendant at the said mine, digging and mining coal for the defendant. That there are great accumulations of natural gas in the Carbon Hill Mine, which have a tendency to fill the mine as the coal therein is being dug, making it impossible for operation, all of which the plaintiff well knew. That with proper air and ventilation to the face of working places throughout the mine, as is required of defendant company by the laws of the state of Washington, the gas is not, and would not be, dangerous to the health or to the operation of the mine. That the law of the state of Washington entitled "An act relating to the proper ventilation and safety of coal mines," etc., provides in part: "Sec. 9. The owner, agent, or operator of every coal mine, whether operated by shaft, slope, or drifts, shall provide and maintain in every coal mine a good and sufficient amount of ventilation for such persons as may be employed therein, the amount of air in circulation to be in no case less than one hundred (100) cubic feet for each person per minute, measured at the foot of the down cast, the same to be increased at the discretion of the inspector according to the character and extent of the workings or the amount of powder used in blasting, and said volume of air shall be forced and circulated to the face of every working place throughout the mine, so that the said mine shall be free from standing powder smoke and gases of every kind." Laws 1891, c. 81. That the defendant, in accordance with this law, had in its employ one John Lowery, on the 22d

day of June, 1896, for the purpose of providing the mine with air, and overseeing and conducting, guiding, and managing the ventilation of the mine for the proper escape, and in freeing the mine from all gases and smoke of every kind for the safety of the employés of the defendant. That John Lowery was a vice principal of the defendant company, and known as a fire boss. and not a fellow servant of the plaintiff. That on the 22d day of June, 1896, the defendant company ordered the plaintiff, as their servant, to mine coal in a certain part of the mine, and to drive a chute leading from the gangway, which chute was known as No. 2. That, in pursuance of said order, the plaintiff did on said day proceed to the face of chute No. 2, which was at a distance at that time of about 125 feet from the said gangway, and connected with chute No. 1 with two crosscuts, known as first and second crosscuts. That crosscut No. 1 is the first crosscut up the chute from the gangway, and crosscut No. 2 is the second and last crosscut up the chute from the gangway. That the crosscuts are made and provided between chutes Nos. 1 and 2 for the purpose of forcing air through the same to the face of the working place in chute No. 2, by means of canvas. That, when the face of the working place in the chute extends about 40 feet above the gangway, the first crosscut is then made, and the air then changed from the gangway to the crosscut up through chute No. 2 about 40 feet above the first crosscut, the second crosscut is then made, and the first crosscut is then closed by a canvas gate by the fire boss, and the air forced up through chute No. 1 through the second crosscut, to the face of the working place in chute No. 2, for the purpose of freeing the same from gases and smoke. That, at about the time of the accident complained of, the plaintiff was working at the face of chute No. 2, which was about 45 feet above the second crosscut. That a short time before said accident he noticed gas accumulating at the said working place, at the face of chute No. 2. That the accumulation of gas was due and owing to insufficient ventilation at the working place, and the lack of ventilation at the working place and face of the chute was due and owing to the negligence and carelessness of the fire boss, John Lowery, and the defendant company, in this: (1) That John Lowery fixed, managed, and arranged the canvas gate in crosscut No. 1 so as to leave a wide space or opening, through which a great volume of the air provided for ventilation would and did pass down and out of chute No. 2, and did not reach the face thereof, and an insufficient amount of air for ventilation was forced up chute No. 1 through the second crosscut to the working place in chute No. 2; and (2) in the defendant ordering and providing crosscuts at the distances of 40 feet apart, whereas they should be not more than 30 feet apart to insure ventilation and a sufficient amount of air at the face of the working places, as provided by law. That, soon after noticing the accumulation of gas, plaintiff complained to Lowery that there was gas accumulating at the face of chute No. 2, and notified Lowery that the accumulation was due to an insufficient amount of air at the face of the chute, and complained to Lowery of the opening in the first crosscut, and requested Lowery to furnish the working place with more air and better ventilation; but that Lowery, neglecting his duty in this respect, failed to fix and arrange the canvas gate in the first crosscut, and failed and neglected to furnish the working place in chute No. 2 with proper ventilation, and willfully and negligently allowed the gas to accumulate at the face of the chute in large quantities. That the plaintiff, in pursuance of his regular course of duty and employment, and thinking and believing that Lowery had performed his duty according to law, and had freed the face of the chute from gas, proceeded to the face of the chute for the purpose of lighting and setting off a charge of giant powder by a fuse thereto attached. That, in his usual way and manner and practice in the mine, the plaintiff lighted a match for the purpose of lighting the fuse, but that, at the moment the match was lighted, the gas which had accumulated at the face of the chute through the carelessness and negligence of the defendant company exploded, throwing the plaintiff violently to the bottom of the chute, burning and mutilating the face and arms of the plaintiff, and burning and destroying both of the plaintiff's eyes, so that the same are beyond recovery, and the plaintiff will always remain blind during the remainder of his life-

time. That the plaintiff has suffered great pain, and still suffers and will suffer great pain, as a result of the injuries complained about, making mental and bodily rest almost impossible. That the accident complained of was caused by the carelessness of the defendant company, in not having provided and maintained the proper circulation of air to the face of chute No. 2, the working place of the plaintiff, so that the same would be free from gas, as required by law. That the plaintiff was a miner by trade, and at the time of his injury was 43 years of age, and in good bodily health and condition, and always considered a careful and cautious man in dangerous places while mining the several years in the said Carbon Hill Coal Mine. That he has dependent upon him for their support a wife and child. That at the time of his injury he was earning, and was physically able to earn, the sum of $100 a month at his trade as a miner. And that the defendant company, by its acts, deeds, negligence, and carelessness, has wrongfully deprived the plaintiff of his means of support, to his damage in the sum of $50,000. The court below sustained the demurrer, and dismissed the action. To reverse this ruling, and the judgment of dismissal, the plaintiff in error sued out this writ of error.

Govnor Teats and Frederick A. Brown, for plaintiff in error.

James M. Ashton, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. Various technical objections are made on a motion to dismiss the writ of error, based chiefly upon the alleged insufficiency of the record; but we think they are not well taken, and that the motion to dismiss should be, and is hereby, denied.

Counsel for plaintiff in error contends that the complaint as amended states a cause of action, in that it shows, as claimed, that the plaintiff in error was injured by and through the negligence of the defendant company, through its vice principal, one John Lowery, in not having provided and maintained the proper circulation of air to the face of the said chute No. 2, the working place of the plaintiff in error, so that the same would be free from gas, as required by law. Counsel for the defendant in error contends that the averments of the complaint as amended show two things: First, that Lowery was a fellow servant, and not a vice principal, of the plaintiff in error; and, second, that plaintiff in error was guilty of gross contributory negligence.

The act of the legislature of the state of Washington approved March 5, 1891, entitled "An act relating to the proper ventilation and safety of coal mines and prescribing the manner of appointment of inspectors," provides in detail for the safety of persons employed in the coal mines of the state, and requires, among other things, that the owner, agent, or operator of every coal mine, whether operated by shaft, slope, or drifts, shall provide and maintain in every coal mine a good and sufficient amount of ventilation for such persons as may be employed therein. The act prescribes the minimum amount of air that shall be in circulation, and for its increase at the discretion of the inspector, according to the character and extent of the workings or the amount of powder used in blasting, and provides that the volume of air so prescribed shall be forced and circulated to the face of every working place throughout the mine, "so that said mine shall be free from standing powder, smoke, and gases of every kind." The purpose of this statute is directed specifically to secure the proper

ventilation of coal mines for the protection and safety of workmen who might otherwise be injured by the explosion of accumulated gases. It is a matter of common knowledge that coal mining is an exceedingly dangerous employment, by reason of the presence of explosive gases given off by the coal, and that the most important branch of colliery work is the management of the ventilation for the purpose of supplying fresh air to the workmen, and for the removal of the dangerous gases from the working places in the mine. In many states, where such mining is carried on extensively, elaborate systems have been provided by law for the protection of the miners, requiring official inspection of the mines and their proper ventilation and means for the escape of the miners in case of accident. In this respect, such a law is, in effect, the measure of that reasonable care which the owner or operator of a coal mine is required to take to avoid responsibility for injuries to workmen arising from accidents of this character. The general duty imposed by law upon the master is to provide a suitable and reasonably safe place for the doing of the work to be performed by the servant. What is a reasonably safe place is generally governed by the circumstances of each particular case; but here the law, having regard to the hazardous nature of the employment, has undertaken to provide adequate protection by imposing upon the master a specific duty, which he must perform to escape the charge of negligence. It is a duty the object of which is to secure a reasonably safe place for the workmen in the mine, and is a positive duty, which cannot be delegated to a servant so as to exempt the master from liability for injuries caused to another servant by its omission. Railway Co. v. Jarvi, 3 C. C. A. 433, 53 Fed. 65; Gowen v. Bush, 22 C. C. A. 196, 76 Fed. 349, 352.

It is alleged in the complaint that the defendant, in accordance with the law to which reference has been made, had in its employ one John Lowery on the 22d day of June, 1896, for the purpose of providing the said mine with air, and overseeing and conducting, guiding, and managing the ventilation of the said mine for the proper escape, and in freeing the said mine from all gases and smoke of every kind, for the safety of the employés of the said defendant; that the said John Lowery was a vice principal of the defendant, and known as a fire boss, and not a fellow servant. Disregarding this last averment as a conclusion drawn from the facts stated, it is clear that, under the law and the allegations of the complaint, Lowery was intrusted with a duty in the performance of which he represented the owners and operators of the mine, and that if he was negligent in the performance of that duty, and the plaintiff was injured thereby, the latter did not assume the risk of such employment. The amended complaint charges that gas did accumulate in the working place at the face of chute No. 2, owing to the negligence and carelessness of Lowery; that plaintiff notified Lowery of the fact, and that it was due to an insufficient amount of air at the face of the chute, and requested Lowery to furnish the working place with more air and better ventilation, which he neglected to do; that, in consequence of this negligence and carelessness on the part of Lowery, an explosion occurred in chute No. 2, and the plaintiff was injured.

In Railroad Co. v. Reesman, 9 C. C. A. 20, 60 Fed. 370, a statute required that railroad companies should erect and maintain lawful fences on the sides of the road. The defendant had negligently suffered the fences along its right of way to become and remain out of repair and insufficient to keep cattle off the track, and, in consequence of this neglect, an animal broke through the fence, got upon the track, and derailed the train upon which plaintiff was employed, whereby he was injured. It was urged by the defendant that the failure to keep the fence in repair was the negligence of a fellow servant, and that, therefore, the defendant was not responsible. Mr. Justice Brewer, speaking for the circuit court of appeals for the Eighth circuit, said:

"But the duty is cast by the statute upon the company, and it is cast as an absolute duty. It must erect and maintain safe and secure fences. It is a duty whose object is the securing a safe place for the employés on the train to do their work, and that, as is known, is an absolute duty cast upon the company, responsibility for neglect of which cannot be evaded by intrusting it to some employé."

In Railroad Co. v. Herbert, 116 U. S. 642, 647, 6 Sup. Ct. 590, this doctrine was applied to a state of facts which, as in the present case, involved the question of contributory negligence as a defense to the action. In that case a brakeman was injured while acting under the orders of a yard master in attempting to stop cars by means of a brake that was out of order. To recover damages for the injury sustained, the plaintiff brought an action against the company, alleging in the complaint that it was its duty to provide good and safe cars and machinery and apparatus of a like character for braking and handling them, and also to make rules and regulations for switching and handling them in the yard, and for notifying employés of the condition of defective and broken cars, so that they might not be subject to unnecessary danger; and he alleged that the company had neglected its duty in these particulars, and thereby, without his fault, he was injured. In its answer the company admitted the allegations as to the employment of the plaintiff and the injuries he received, but set up that it was his duty to know, and that he did know, the condition of each of the cars, and that he carelessly put his leg between them when setting the brake, and thus, through his own fault, suffered the injury of which he complained. There was a verdict for the plaintiff, and the case was taken to the supreme court upon a writ of error. That court, in discussing the questions of law involved in the case, said:

"The general doctrine as to the exemption of an employer from liability for injuries to a servant, caused by the negligence of a fellow servant in a common employment, is well settled. When several persons are thus employed, there is necessarily incident to the service of each the risk that the others may fail in that care and vigilance which are essential to his safety. In undertaking the service he assumes that risk, and, if he should suffer, he cannot recover from his employer. He is supposed to have taken it into consideration when he arranged for his compensation. * * * It is equally well settled, however, that it is the duty of the employer to select and retain servants who are fitted and competent for the service, and to furnish sufficient and safe materials, machinery, or other means by which it is to be performed, and to keep them in repair and order. This duty he cannot delegate to a servant, so as to exempt himself from liability for injuries caused to another servant by its omission. Indeed, no duty required

SOMMER V. CARBON HILL COAL CO.     59

of him for the safety and protection of his servants can be transferred, so as to exonerate him from such liability. The servant does not undertake to incur the risks arising from the want of sufficient and skillful co-laborers, or from defective machinery or other instruments with which he is to work. His contract implies that in regard to these matters his employer will make adequate provision, that no danger shall ensue to him. This doctrine has been so frequently asserted by courts of the highest character that it can hardly be considered as any longer open to serious question."

Applying this doctrine to the present case, we think the complaint is, in this respect, sufficient. The contention that the plaintiff has stated facts which show that he was guilty of contributory negligence is based largely upon the allegation that, after the plaintiff had discovered the accumulation of gas in the face of chute No. 2 and had notified Lowery of the dangerous condition of the place, he proceeded to the face of the chute for the purpose of lighting and setting off the charge of giant powder by a fuse thereto attached, and that, in his usual manner and way and practice in the mine, he lighted a match for the purpose of lighting the fuse, but that, at the moment the match was lighted, the gas which had accumulated at the face of the chute exploded. The contributory negligence which, it is claimed, is disclosed by this allegation consisted in the plaintiff returning to the place where he had been working a short time before, and proceeding to light a charge of giant powder so soon after the dangerous presence of a large quantity of gas had been detected and reported to him to Lowery. But how soon he returned does not appear from the allegations of the amended complaint, and it cannot be determined from the facts stated that he returned to his work before a reasonable time had elapsed to clear the working place of the accumulated gas. Moreover, it is alleged that the "plaintiff, in pursuance of his regular course of duty and employment, and thinking and believing that the said Lowery had performed his duty according to law, and freed the face of the said chute from gas," etc., proceeded to his work. It would have been better pleading for the plaintiff to have stated some fact or given some reason for thinking and believing that Lowery had performed his duty; nevertheless, the court cannot presume that he had no reason for entertaining such a belief; and, as against such averment, how can it be said that the plaintiff was, by his own showing, guilty of contributory negligence? The plaintiff may, upon the trial, produce such evidence as will fully justify his conduct in returning to his work as he did.

As was said by the supreme court in Railway Co. v. Ives, 144 U. S. 408, 417, 12 Sup. Ct. 679, 682:

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the

parties in that case was such as would be expected of reasonable, prudent men under a similar state of affairs. When a given state of facts is such that reasonable men may differ fairly upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court."

It may be observed, further, that it is incumbent upon the court to indulge every reasonable intendment and presumption in favor of the pleading. The Code of Procedure of the State of Washington provides one form of civil action for the enforcement or protection of private rights and the redress of private wrongs. 2 Hill's Ann. St. & Codes Wash. p. 34, § 109. The complaint in this action is required to contain, among other things, a plain and concise statement of facts constituting the cause of action without unnecessary repetition. Id. p. 9, § 188. It is further provided that in the construction of a pleading, for the purpose of determining its effect, its allegations shall be liberally construed, with a view to substantial justice between the parties. Id. p. 117, § 206. This rule of construction, contrary to that established by the common law, requires that every reasonable intendment and presumption is to be made in favor of the pleading; and it will not be set aside on demurrer unless it be so fatally defective that, taking all the facts to be admitted, the court can say they furnish no cause of action whatever. Chambers v. Hoover, 3 Wash. T. 107, 110, 13 Pac. 466; Isaacs v. Holland, 4 Wash. 54, 59, 29 Pac. 976; Boyle v. Railway Co., 13 Wash. 383, 387, 43 Pac. 344; Morse v. Gilman, 16 Wis. 504; Bank v. Kowalsky, 105 Cal. 41, 38 Pac. 517; U. S. v. Parker, 120 U. S. 89, 94, 7 Sup. Ct. 454. We think, under this rule, that the amended complaint states facts sufficient to constitute a cause of action. The judgment of the lower court is therefore reversed, with directions to overrule the demurrer.