### CUDAHY PACKING CO. v. ANTHES.

(Circuit Court of Appeals, Eighth Circuit. July 28, 1902.)

No. 1,693.

1. **MASTER AND SERVANT—INJURIES TO SERVANT—PROXIMATE CAUSE—INSTRUCTION.**

   In action by a servant for injuries owing to the parting of a rope by which an elevator was raised and lowered, the court charged, in substance, that it was defendant's duty to provide a reasonably safe rope, and that if defendant violated such duty plaintiff could recover. Defendant contended that the instruction was erroneous, and that it did not require the jury to find whether such negligence was the proximate cause of the injury. *Held*, that the contention was of no merit, since, if the rope was not safe, defendant's negligence was unquestionably the proximate cause of plaintiff's injury.

2. **SAME—FELLOW SERVANT—CONCURRING NEGLIGENCE.**

   Where a servant is injured owing to the negligence of the master in furnishing proper appliances for an elevator, the negligence of a fellow servant in the operation of the elevator does not relieve the master from liability.

3. **SAME—NEGLIGENCE OF FELLOW SERVANT.**

   In action for injuries sustained by a servant owing to the parting of the rope by which the elevator was raised and lowered, when it was suddenly stopped by a fellow servant, there was nothing in the evidence

¶ 2. Concurrent negligence of master and fellow servant, see notes to Maupin v. Railway Co., 40 C. C. A. 236.

See Master and Servant, vol. 34, Cent. Dig. §§ 515, 518, 526, 527.

to indicate that it was regarded by any one as hazardous to stop the elevator suddenly, or anything tending to show that the operator generally stopped it more slowly than on the occasion of the accident, nor that he knew of any weakness in the rope, or ground for apprehending danger. *Held*, that no negligence on the part of the operator was shown.

4. SAME—ELEVATOR INSPECTOR.

One inspecting an elevator is not a fellow-servant of one whose duties require him to ride on the elevator.

In Error to the Circuit Court of the United States for the District of Nebraska.

The plaintiff in error (defendant below) is a corporation engaged in slaughtering cattle, sheep, and swine, and in curing, packing, and selling the products. The defendant in error (plaintiff below) was one of its employés, and on November 8, 1900, was engaged in removing hams from the fourth story to the pickling department in the third story of a packing house of defendant in Omaha. He loaded the hams on a truck in the fourth story, which he wheeled to an elevator, in which he, with his loaded truck, was lowered to the third story, where the hams were moved on the truck to the place where they were to be left. On one of these trips on that day the elevator was lowered faster than usual, and stopped more suddenly than usual when it reached the floor of the third story, when from the jar or jerk of the stop the rope which sustained the elevator cage, and by which it was raised and lowered, parted, and the cage with the plaintiff and the loaded truck fell to the bottom of the elevator shaft, and the plaintiff sustained severe injuries. A new manila rope, 2 inches in diameter and 240 feet long, had been put on this elevator July 1, 1900. About 112 feet of this rope was exposed to the weather, and this part, which also went around the drum, became worn and weakened, so that about the middle of September, 1900, it was cut off, and the part running to the elevator spliced to new rope, extending to the drum. This rope, although inspected nearly every day, and deemed by the inspector sufficient up to the time of the accident, had become weakened and somewhat worn and frayed, and it parted at the time of the accident by the pulling apart of the said splice. The petition alleged negligence of the defendant in failing to provide a safe rope and safe appliances for the security of said elevator. These allegations were in the amended answer met by a general denial, and allegations that plaintiff's injuries were caused by his own contributory negligence and the negligence of a fellow servant. Upon the trial the jury rendered their verdict in favor of the plaintiff for the sum of $6,500, and on the same day, May 29, 1901, judgment was entered in favor of the plaintiff and against the defendant for $6,500 and costs.

Edson Rich and Charles E. Clapp, for plaintiff in error.

H. C. Brome (D. L. Johnson and A. H. Burnett, on the brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

LOCHREN, District Judge, after stating the case as above, delivered the opinion of the court.

The assignments of error are directed to the parts of the instructions to the jury which were excepted to. The first assignment challenges this portion of the charge:

"The law imposed the duty upon the defendant, Cudahy Packing Company, to use ordinary care to provide a reasonably safe rope with which to

¶ 4. Who are fellow servants, see notes to Railroad Co. v. Smith, 8 C. C. A. 668; Railway Co. v. Johnston, 9 C. C. A. 596; Flippin v. Kimball, 31 C. C. A. 28.

operate this elevator, and it devolved upon the defendant to use ordinary care to provide the plaintiff with a reasonably safe appliance with which he could perform his work, and also a reasonably safe place for him to perform his services. That was the duty of the defendant, and if you are satisfied by a preponderance of the evidence in this case that the defendant violated its duty towards the plaintiff in the particulars mentioned, then the plaintiff would be entitled to recover whatever damages naturally and legitimately followed from the injuries which resulted from such negligence."

This portion of the charge is criticised, because it did not, in case the jury should find that the defendant was negligent, upon the evidence, and the law so clearly stated, require the jury to find further whether or not such negligence of the defendant was the proximate cause of the injury sustained by plaintiff.

It is improper to confuse a jury by submitting to them, as a matter which they are to pass upon and determine, an issue which, though made by the pleadings, has been entirely eliminated from the case by the whole evidence when the case goes to the jury. It was clear and unquestioned at the close of the testimony that at the time of the accident the rope furnished by defendant to operate its elevator parted, causing the fall of the elevator cage and the injury to plaintiff. If that rope was then not a reasonably safe rope for the use it was put to, and was continued there through the failure of the defendant to use ordinary care to provide a reasonably safe rope for the operation of that elevator, such negligence of defendant was, unquestionably, a proximate cause of the injury to plaintiff.

The question as to defendant's alleged negligence was fairly submitted to the jury, and formed the only material issue for the jury to pass upon, in view of all the evidence at the close of the trial. There was then no claim, nor any evidence on which to base any color of claim, that there was any contributory negligence on the part of the plaintiff. James Tuets, who operated the elevator, was the fellow servant of the plaintiff, and had he been guilty of negligence which alone caused the injury to plaintiff, the defendant would not be responsible. But if Tuets had been negligent in the management of the elevator, and the defendant had also been negligent, and kept an insufficient and unsafe rope on the elevator, from failure to use ordinary care in respect to the rope, and the negligence of the defendant and that of the fellow servant concurred in causing the injury, the defendant would still be liable. It is no defense that another participated in the wrong. "It is undoubtedly the master's duty to furnish safe appliances and safe working places, and if the neglect of this duty concurs with that of the negligence of a fellow servant, the master has been held to be liable. Clark v. Soule, 137 Mass. 380; Cowan v. Railway Co., 80 Wis. 284, 50 N. W. 180; Sherman v. Lumber Co., 72 Wis. 122, 39 N. W. 365, 1 L. R. A. 173; Hayes v. Railroad Co., 111 U. S. 228, 4 Sup. Ct. 369, 28 L. Ed. 410; Railroad Co. v. Reesman, 9 C. C. A. 20, 60 Fed. 370, 19 U. S. App. 596; Sommer v. Coal Co., 32 C. C. A. 156, 89 Fed. 54, 59 U. S. App. 519; Flike v. Railroad Co., 53 N. Y. 550, 13 Am. Rep. 545; Booth v. Railroad Co., 73 N. Y. 38, 29 Am. Rep. 97; Railway Co. v. Cummings, 106 U. S. 700, 1 Sup. Ct. 493, 27 L. Ed. 266." Deserant v.

Railroad Co., 178 U. S. 409, 420, 20 Sup. Ct. 967, 44 L. Ed. 1127. It was needless, therefore, to incumber the deliberations of the jury with any question as to whether Tuets was careful or negligent, as the solution of that question would not aid in the determination of the liability of the defendant, who, if guilty of negligence in respect to the rope which broke, was equally responsible to the plaintiff whether Tuets was careful or not. But the court was right in holding that there was no evidence of such unusual management by Tuets as to warrant submitting to the jury any question as to his negligence. The elevator was provided by defendant for moving its meat products between the different floors of its building. Its speed, and the appliances for controlling its movements, were provided for in the plan of its construction. It was made to move rapidly to speed the work, and to be stopped suddenly, or move gradually, as convenience might suggest. The only security for the cage with its load was the strength of the rope by which it was suspended and moved in the shaft. There is nothing in the evidence to indicate that it was regarded by anybody as hazardous to move it as rapidly or to stop it as suddenly as its construction permitted, nor anything tending to show that the operator generally stopped it more gradually than in this instance from any apprehension of danger, or for other purpose than to enable him to stop with more exactness at the proper place. At this time he had, perhaps inadvertently, allowed it to pass rapidly nearly to the third floor before checking its speed, and then stopped it suddenly. But this sudden stoppage was intentional, and not the result of accident or carelessness. He had full control of the levers, and purposely made the stop. He had run that elevator more than two years. There is no evidence that he had any knowledge or suspicion of any weakness of the rope, or ground for apprehending danger in so stopping, instead of allowing the cage to pass a trifle below the floor, incurring the slight delay of bringing it back. It was not a case when an unusually heavy load, more than the elevator was constructed to move with safety as its ordinary load, was placed upon it. Tuets, in the absence of notice to the contrary, had, so far as the evidence shows, the right to assume that the rope provided and in use was strong enough to sustain such ordinary load, when the elevator was run and stopped as rapidly as its construction allowed of. The inspector of the rope, while performing that duty, was not the fellow servant of the plaintiff, but was engaged in the performance of a duty of the master.

The foregoing covers all the assignments of error, and the judgment is affirmed.