JOSEPH SCHMALSTIEG v. THE LEAVENWORTH COAL COMPANY.

No. 12,782.   (70 Pac. 888.)

SYLLABUS BY THE COURT.

MINES AND MINING — *Injuries to Miners — Act of 1897 Construed.* Chapter 159, Laws of 1897 (Gen. Stat. 1901, §§ 4147–4163), which makes it incumbent upon every mine-owner, agent, lessee or operator of coal-mines to employ a competent fire-boss, whose duties, as prescribed by the statute, are to examine every working-place every morning with a safety-lamp before miners or other employees enter their respective working-places, does not prescribe the limit of care to be exercised by such mine-owner or operator toward employees engaged in working in the mines. This statute increases the duty of the owner or operator of mines by requiring him to employ a competent person to look specially after the condition of the mine; and if, through the negligence of such fire-boss, one of the employees is injured by the explosion of gas therein, the owner or operator is liable in damages for such injury.

Error from Leavenworth district court; LOUIS A. MYERS, judge.    Opinion filed December 6, 1902.    Reversed.

*Dawes & Wulfekuhler,* for plaintiff in error.

*Atwood & Hooper,* and *C. R. Middleton,* for defendant in error.

43—65 KAN.

The opinion of the court was delivered by

GREENE, J.: Joseph Schmalstieg sued the Leavenworth Coal Company for injuries sustained by the explosion of gases in the coal-mine in which he was working as a miner. When plaintiff had introduced his evidence the defendant demurred thereto. The demurrer was sustained and judgment rendered thereon, to reverse which Schmalstieg prosecutes this proceeding.

We are of the opinion that the demurrer should have been overruled. The important and controlling question in the case is, Does a mine-owner, agent, lessee or operator of any coal-mine discharge himself of liability to an employee who is injured by the negligent omission of the fire-boss to perform the duties imposed on him by the statute, when such owner, agent, lessee or operator has exercised ordinary care in the selection of such fire-boss? We understand that this question was resolved in the affirmative by the court below; hence, the sustaining of the demurrer.

The statutes directly applicable to the question under consideration and relied on for the contention of the defendant below are sections 4150 and 4162, General Statutes of 1901, which read:

"SEC. 4150. The inspector of mines shall cause the volume of air to be increased when necessary to such an extent as will dilute, carry off and render harmless the noxious gases generated therein. And mines generating fire-damp shall be kept free of standing gas, and every working-place shall be carefully examined every morning with a safety-lamp by an examiner or fire-boss, before miners or other employees enter their respective working-places. Said examiner or fire-boss shall register the day of the month at the place of the workings, and also on top in a book which shall be kept in the weighmaster's office for such special

purpose ; and as proof of inspection, he shall daily record all places examined in said book, and in case of danger where fire-damp may have accumulated during the absence of any person or persons employed therein, said examiner or fire-boss must notify the miners or those employed therein, or those who may have occasion to enter such places. And the hydrogen or fire-damp generated therein must be diluted and rendered harmless before any person or persons enter such working or abandoned part of the mine with a naked light.''

''Sec. 4162. In case of non-compliance with sections 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14 and 15 of this act by any owner, operator, agent or lessee of any mine, or any miner or other employee working therein, upon whom any duty is cast by any of said sections, he shall be deemed guilty of a misdemeanor, and shall, upon conviction of the same, for each offense, be punished by a fine of not less that one hundred dollars and not to exceed three hundred dollars, or by imprisonment in the county jail for a period of not less than thirty days and not to exceed ninety days, or by both such fine and imprisonment, in any court having competent jurisdiction ; provided, that this act shall be construed as to affect or apply only to coal-mines in this state, or any person or persons operating or owning such coal-mines.''

It is ably argued that this law takes from the owner, agent, lessee or operator of every coal-mine, the exercise of judgment or discretion in determining the volume of air, necessary to dilute, carry off and render harmless the noxious gases generated in such mine ; and, in providing that each mine-owner or operator shall select some competent person, called an examiner or fire-boss, to investigate, determine and direct how and where the air shall be distributed, and how much will be necessary to dilute, carry off and render harmless the noxious gases generated therein, the law has relieved the owner or operator from any

responsibility or civil liability to persons injured through the negligent acts or omissions of such examiner or fire-boss, provided the owner or operator shall have exercised care in the selection and employment of a competent person as fire-boss. This position is sought to be reenforced by reference to section 4162, above quoted, which makes the neglect of the examiner or fire-boss to perform the duties imposed on him by the statute a misdemeanor, and subjects him to a fine and imprisonment. Counsel for defendant in error state it thus:

"By this statute the legislature of the state of Kansas has undertaken to prescribe and define the manner and measure of care that shall be exercised by mine-owners with reference to the accumulation of gas in the working-places of said mine, thereby prohibiting the master from exercising his judgment with reference to the same.

"After the mine-owner has complied with the statute and employed a competent person for examiner or fire-boss, he or it has performed the measure of care required and in the manner required by the law towards his employees, and if through the examiner's or fire-boss's negligence one of the employees is injured, . . . the master is not responsible for the negligence of the examiner or fire-boss, . . . especially where the statute prescribed a penalty for violation of its provisions. . . ."

The contention is plausible and not without authority in adjudicated cases, but we do not think it sound. The authorities in support of this position base their conclusion on the ground that the fire-boss is a creature of the legislature, selected by the mine-owner in obedience to the commands of the law and in the interest and protection of the miners themselves; that, as such, he is a coemployee or fellow servant, and, if he is negligent or careless in the performance

Schmalstieg v. Coal Co.

of his duties, the miners can at once discover it and notify the superintendent, while the owner, with every wish to protect the miners, has no such opportunity of information.   Some of the authorities sustaining this position are : *Hughes v. Oregon Improvement Co.*, 20 Wash. 294, 55 Pac. 119 ; *Colorado Coal and Iron Co. v. Lamb*, 6 Colo. App. 255, 40 Pac. 251 ; *Waddell v. Simoson*, 112 Pa. St. 567, 4 Atl. 725 ; *Delaware and Hudson Canal Co. v. Carroll*, 89 Pa. St. 374 ; *Redstone Coke Co. v. Roby*, 115 Pa. St. 364, 8 Atl. 593.   We do not pretend to reconcile these decisions with the numerous others holding the opposite opinion, which are hereafter cited.

At common law it is the duty of a master to exercise care and diligence to provide his servants with a reasonably safe place to work, and reasonably safe and suitable tools and appliances with which to perform the service.   This duty can only be satisfied by performance.

One of the chief dangers to be guarded against in the mining of coal is the accumulation of noxious and explosive gases and dust.   The duty, therefore, at common law, of guarding against these dangers, and making the place reasonbly safe for working men, is cast upon the master, and he is liable for injuries resulting from a neglect to perform such duties, unless relieved therefrom by statute.   The title of the act in question, chapter 159, Laws of 1897, reads :

"An act to provide for the health and safety of persons employed in mines, and supplementary to and amendatory of chapter 66*a*, General Statutes of 1889, and repealing chapter 171, Session Laws of 1895, and providing penalty for violation of the same."

We would be surprised, indeed, to find in an act bearing the above title a provision which takes from

the miner the strongest protection from personal injuries the law has ever given, namely, the right to make his employer respond in damages for injuries resulting from the negligence of such employer in not providing him a safe place to work. The tendency of modern legislation is to magnify, rather than to minimize, the individual, especially the man whose vocation is that of a common laborer; to throw around him greater protection and surround him with better conditions and advantages for self-improvement; and to secure these objects increase, rather than decrease, the instances and circumstances under which his employer shall be civilly liable for personal injuries sustained because of the negligence of such employer. Therefore, a statute that would take away from him any of the protection of the common law should be plain, unambiguous, and subject to no other construction or interpretation.

Section 3 of chapter 159, Laws of 1897, being the same act from which the above quotations are taken, provides:

"Every mine-owner, agent, lessee or operator of coal-mines . . . shall provide and hereafter maintain for every mine ample means of ventilation. . . . Said volume of air shall be directed or circulated where any person or persons may be working in any of said mines."

It will be observed that the duty is here placed upon the mine-owner or operator to provide and maintain ample means of ventilation, and the volume of air thus provided "shall be directed or circulated where any person or persons may be working in any of said mines."

We also find, in section 4150, General Statutes of 1901, the following:

"And mines generating fire-damp shall be kept free

of standing gas, and every working-place shall be carefully examined every morning with a safety-lamp by an examiner or fire-boss before miners or other employees enter their respective working-places.''

While the latter section designates the person who shall make the examination, it is the duty of the owner or operator to keep such mine free of standing gas. The act provides that the owner or operator of mines shall employ a fire-boss. It defines his duties and makes a neglect to perform them a misdemeanor, subject to fine and imprisonment. The only object sought is an additional precaution to secure a safe place for miners to work. It was not intended to relieve the owner or operator from any civil liability for damages resulting to the laborer from the negligent performance of such duties by the fire-boss.

The act in question in no way limits or takes from the owner or operator the general supervision of the work, or the exercise of judgment in the manner or system of ventilation. He is left free, in the selection of the person to perform those duties, to fix the compensation, prescribe and require of him the performance of duties additional to those designated by the statute, and to exercise a general supervision over him in the performance of all of his prescribed duties.

Authorities are numerous holding that under statutes similar to ours the employer is not relieved of civil liability for personal injuries resulting from the negligent performance of the duties imposed by law upon the fire-boss. In *Iron Co. v. Pace*, 101 Tenn. 476, 484, 48 S. W. 232, an action to recover damages resulting from the explosion of dust in the mine, it was contended that the owner was not liable because the statute provided for the appointment of a fire-boss

whose duty it was to keep the mine free of explosive gas.  The court said :

"The tenth assignment is that the court erred in defining the degree of care required of a master in furnishing a safe room or entry where the plaintiff should work, and it is insisted that the effect of the charge is to make the mine-owner an insurer of the safety of the premises where the servant is to work, and an insurer, also, of the skill and prudence of fellow-servants.  Taking the charge as a unit, we do not think it warrants the construction contended for, and is in accord with the general rule that 'it is the duty of the master to keep his premises used in the prosecution of his business in a reasonably safe condition, and, if he fails to do so, he is liable to the servant for all injuries resulting to him from such defects.'"

In speaking of the statute, the court further said :

"The eighth clause provides that, 'to better secure the ventilation to either coal-mines or collieries, to provide for the health and safety of the men employed therein otherwise and in every respect, the owner or agent, as the case may be, in charge of every coal-mine and colliery, shall employ a competent inside overseer, to be called a mining boss, who shall keep a careful watch over the ventilating apparatus, airways, tramways, pumps, timbering, signaling arrangements, tubes, etc., and all things connected with and appertaining to the safety of the men at work in the mine. He or his assistant shall examine carefully the workings of all mines generating explosive gases every morning before the miners enter the coal-mine or colliery, and shall ascertain that the mine is free from all danger.'"

The case of *Sommer v. Carbon Hill Coal Co.*, 32 C. C. A. 156, 89 Fed. 54, 57, arose under the statute of Washington, which is identical with our own.  The court said :

"Disregarding this last averment as a conclusion drawn from the facts stated, it is clear that, under the

law and the allegations of the complaint, Lowery was entrusted with a duty in the performance of which he represented the owners and operators of the mine, and that if he was negligent in the performance of that duty, and the plaintiff was injured thereby, the latter did not assume the risk of such employment.''

In the *Linton Coal and Mining Company v. Persons*, 11 Ind. App. 264, 275, 39 N. E. 214, the court, in construing a similar statute, said:

"In other words, the effect of the contention is that the employment of a competent mine-boss is the full measure of the duty of the owner or operator of the mine in such cases. . . .

"The gist of the action is not the failure to employ a competent mine-boss, but grows out of the failure of the employer to discharge the duties resting on him in relation to providing a safe working-place for appellee.  This duty appellant could not, in our opinion, by virtue of the provisions of the statute, delegate to the mine-boss so as to escape liability on account of the failure to perform the acts therein required.  The statute prescribes the care which the employer is required to exercise.  The employment of a competent mine-boss is not the exercise of the care.  The failure of the boss to perform the duties designated in the statute is, under the statute, the negligence of the master. . . . In other words, the statute was not intended to lessen the duties of the master, but was intended to increase his duty to the extent of requiring him to employ a mining boss to give special attention to the condition of the mine.  It was not contemplated, however, when the mining boss was employed, that such employment should relieve or exempt the master from liability.''

We are of the opinion that the construction placed on the statute in the above-cited opinions is correct, and that the demurrer should have been overruled.

There is some contention that, notwithstanding the construction of the statute, the evidence introduced

by the plaintiff below was insufficient to prove negligence on the part of the company. We have given this matter no consideration, as a reversal of the judgment must necessarily follow the conclusion we have reached upon the other question.

The cause is reversed and remanded, with instructions to overrule the demurrer to the evidence.

All the Justices concurring.