[No. 1942. Decided July 7, 1896.]

DOLISKA B. DAVIS, *Administratrix, Appellant, v.* A. FORD *et al., Respondents.*

PLEADING — REPLY — INCONSISTENT DEFENSES — JUDGMENT ON PLEAD-
INGS — ESTOPPEL — UNAUTHORIZED SALE BY ADMINISTRATRIX — FAIL-
URE OF COURT TO MAKE FINDINGS — DISSOLUTION OF INJUNCTION —
CONTINUANCE OF CONTRACT RIGHTS.

When one portion of a reply to an affirmative defense set up in the answer which alleges a contract between the parties authorizing the acts complained of, admits such contract, another portion of the reply denying the contract, on the ground that plaintiff had

no power to make it, should be stricken out on motion of the defendant therefor.

Error of the court in refusing to strike a reply upon defendants' motion, is cured by the action of the court in trying the case upon the theory that such reply was entirely irrelevant and immaterial.

Judgment on the pleadings is not authorized where a reply, though insufficient in law, has actually been filed to the affirmative matter in the answer.

Failure of the court to make special findings cannot be urged on appeal, where no requests therefor appear in the record.

Where an administratrix has sold timber upon lands of her intestate for a fair price to parties purchasing in good faith, and, after having received from them almost the whole purchase price and refused to receive the balance, the amount received having been appropriated to the use and benefit of herself and the estate, and accounted for in her report to the court, she cannot come into a court of equity and rescind her sale and deprive the purchasers of the benefits thereof simply on the ground that she was not authorized by the court to make the sale as required by statute.

Even if an unauthorized sale of timber by an administratrix was merely a license to cut and remove the timber, she is estopped from taking advantage of its invalidity, when the licensee has acted in good faith and paid her a valuable consideration therefor.

Where defendants have been improperly restrained from performing certain acts under a contract, which was to be terminated at a certain time, the court may properly, in refusing to continue the injunction, grant defendants such further time after the period for which their contract rights had been given as would be equivalent to what they had lost by the interference of the plaintiff in securing a restraining order.

Appeal from Superior Court, Skagit County.—HON. HENRY McBRIDE, Judge.   Affirmed.

*Lindsay, King & Turner*, and *Moore & Pittman*, for appellants.

*Million & Houser*, and *James O. Barrow*, for respondents.

The opinion of the court was delivered by

ANDERS, J.—In the month of May, 1891, one B. N.

L. Davis died intestate in Skagit county, owning a large tract of land therein situated in sections 3, 4, 9 and 10, in township 34, north of range 4 east, and lying north of the county road leading from Mount Vernon to Clear lake, and between the Nookachamps creek and Skagit river. The plaintiff is the widow of the said deceased, and soon after his death was appointed administratrix of his estate. On March 8, 1895, as such administratrix, she brought this action in the superior court of Skagit county to enjoin the defendants from trespassing upon the lands above mentioned, and from cutting, removing and appropriating the timber thereon, and alleged in her complaint, among other things, that the defendants have wrongfully entered upon said land and premises and are now wrongfully and unlawfully trespassing thereon against plaintiff's will and without her consent, and are wrongfully and unlawfully cutting and removing the timber growing thereon and appropriating the same to their own use and benefit, and thereby causing great and irreparable injury to said estate; and that the defendants have refused to desist from so trespassing upon said lands and threaten to continue to cut, haul and appropriate said timber to their own use, and unless they are restrained by an order of this court they will cut, remove and appropriate all the timber of value growing on said lands, and asked for a temporary restraining order commanding the defendants, their agents, servants and employees to refrain from cutting, hauling, removing or appropriating to their own use any timber or logs growing on said land or belonging to said estate and from entering upon or trespassing on such lands or any part thereof; which restraining order was duly issued by the court.

The defendants, answering, denied that they had wrongfully entered upon the lands and premises described in the complaint, or were wrongfully upon said lands or against plaintiff's will or consent, or were trespassing thereon; that they were wrongfully cutting timber or removing timber growing thereon, or that they were wrongfully or unlawfully appropriating·the same or any part thereof to their own use, and denied that they had caused great or irreparable injury to said estate or any damage or injury whatever. And for an affirmative defense the defendants alleged that on September 27, 1892, the plaintiff, as such administratrix, entered into a certain written contract of sale with the defendants, whereby she, as such administratrix, bargained, sold and conveyed to the defendants all the merchantable timber standing, lying and being upon all the land lying north of the county road leading from Mount Vernon to Clear lake in said county and west of the Nookachamps and between said county road and the Skagit river, located in sections 3, 4, 9 and 10, in township 34, north, range 4 east; that defendants were, by the terms of said contract, given until March 1, 1895, to cut and remove said timber, and were to pay the plaintiff therefor the sum of $1,200; that the defendants, relying upon the representations of the plaintiff and her attorney, who drew the contract of sale, that plaintiff had full power and authority to execute said contract, entered into the same; that in pursuance of said agreement the defendants, on September 27, 1892, paid the plaintiff as such administratrix the sum of $250 as part of the purchase price for said timber, and subsequently made other payments on account thereof, which are specified; that in September, 1894, it was mutually agreed between the plaintiff and the

defendants, in consideration of the payment of $75 by defendants to plaintiff, that the time for cutting and removing the said timber should be extended from March 1, to October 1, 1895; that at the time of the making of said contract and sale it was necessary for the plaintiff as such administratrix to raise funds with which to pay the debts of her intestate's estate and support the family, and that the contract was entered into by the plaintiff as such administratrix for the purpose of raising money with which to meet the expenses of administration and pay the debts and family allowances; that the said sale was made after full and careful investigation by plaintiff as to the worth and value of said timber, and that plaintiff at such time deemed it to the best advantage of the estate to make the sale; that said sale was fair and was to the best interest of all parties concerned; that the plaintiff and said estate have received the full value of the property so sold; that the plaintiff as such administratrix has accounted for the money paid to her by defendants and has appropriated the same to the use and benefit of the estate and has applied the same in payment of debts of the estate and in paying the family allowance ordered by the court in the matter of said estate to plaintiff and the minor children of plaintiff and her deceased husband; that in pursuance of, and immediately after the making of, said contract the defendants entered upon and took possession of said premises and put the same in a condition to enable them to cut and remove said timber by building roads, etc., and expended thereon the sum of $1,200, and that such possession was taken and said improvements made with the knowledge, approval and consent of the plaintiff as such administratrix.

To this affirmative defense the plaintiff interposed a demurrer on the grounds that the facts stated were insufficient and that the court had no jurisdiction. The demurrer was overruled and an exception taken. The plaintiff then replied to the affirmative matter set up in the answer, admitting the making of a contract of sale of timber with defendants, but averring that the contract as made only included parts of the premises described in the complaint and answer, specifying them, and alleging that defendants were to have until October 1, 1894, in which to cut and remove said timber and that all of the timber on said lands had been cut and removed by the defendants. For a further reply to the defendants' affirmative defense plaintiff alleged that she had never obtained any authority from the court to enter into the contract mentioned and that she had no right or authority to make such contract or to sell said timber. She also alleged that the defendants had without any authority cut from other lands described in the complaint other timber which the defendants have appropriated or are about to appropriate to their own use, and for which she asked judgment against the defendants in the sum of $1,371. The defendants moved to strike out the reply on the ground that it was not responsive to the complaint and not a proper reply, and to strike out the second affirmative defense set forth in the reply, for the reason that it was irrelevant and immaterial and not responsive to the issues of the case, which motions were denied and exceptions allowed. The defendants also moved for judgment on the pleadings and that motion was also denied and an exception noted.

It appears that the instrument of writing mentioned in the pleadings had been lost by the attorney for the

plaintiff with whom it had been deposited for safe keeping, and both parties gave evidence as to its contents. Upon the trial the court found as facts that in September, 1892, the plaintiff, as administratrix of said estate, sold all the merchantable timber fit for logging purposes on certain specified portions of the premises described in the complaint and answer; that the contract of sale was in writing and that by its terms the defendants were to have until the first day of March, 1895, in which to cut and remove the timber, which time was for a certain consideration mentioned extended to October 1, 1895; that the defendants have removed from the premises included in the contract and other premises certain shingle bolts, but from the evidence it is impossible to determine what proportion thereof was taken from the premises included in the contract or was made from merchantable timber fit for logging purposes, and if ascertainable it would be immaterial as no judgment could be given therefor under the pleadings in this case; that at the time of said sale $1,200 was a fair and reasonable price for said timber and at that time the estate was largely in debt, and that there never was sufficient personal property to pay the debts of the estate; that the plaintiff never applied to or obtained any order of the court for the sale of said timber; that the sale was never reported to or confirmed by the court; that said estate is still unsettled and in course of administration; that an order was made by the court in the matter of said estate allowing plaintiff and her minor children $100 per month out of the estate for living expenses; that at about the time of the commencement of this action the plaintiff filed her account as such administratrix in which she in-

cluded and accounted for the money received by her
from the defendants on account of the sale of said
timber, which money has been indiscriminately used
by her as such administratrix in paying debts of the
estate, family allowances and expenses of administra-
tion.   The court also .found that the sale when made
was to the best interest of the plaintiff, the heirs and
creditors of the estate; that defendants purchased the
timber in good faith, believing that the plaintiff had
the power and authority to sell the same and that
they relied upon and believed the statement of
plaintiff's attorney that the sale was valid and that
plaintiff was aware that the defendants were cutting
and removing shingle bolts for more than a year
prior to the commencement of this action, and that a
certain note for $200, due March 19, 1895, signed by
defendants and two sureties and which was delivered
to plaintiff in part payment for the timber, was not
owned by plaintiff but by the First National Bank of
Mount Vernon, but had been indorsed by her and she
was liable thereon as such indorser, and that the de-
fendants had paid said note since the trial of this
case.

As conclusions of law the court found that the plain-
tiff was estopped to deny the validity of said sale and
was estopped from objecting to the entering upon
said premises by the defendants, their servants, agents
and employees, and cutting and removing all the
merchantable timber thereon fit for logging purposes,
which should properly be removed by way of Blarney
lake or Nookachamps, and that the injunction here-
tofore issued herein should be dissolved and dismissed
in so far as the same forbids the cutting and removal
of the merchantable timber fit for logging purposes
on said premises; but that said injunction should re-

main in force and be made perpetual in so far as it prevents the defendants, their agents, servants and employees from cutting and removing any timber from said premises, excepting merchantable timber fit for logging purposes only. And thereupon the court entered a judgment and decree in accordance with said conclusions.

The plaintiff appeals from the judgment and especially that part thereof denying the injunction as to cutting timber for logging purposes, and the defendants appeal from that part of the judgment awarding a permanent injunction prohibiting them from cutting timber fit for shingle bolts only. The defendants insist that the court erred in denying their motion for judgment on the pleadings as well as their motion to strike out the reply.

It will be remembered that the first affirmative reply to the new matter in the answer admitted a sale of the timber on parts of the land described in the complaint and answer, but alleged that defendants had cut and removed all the timber thereon. Standing alone that constituted a proper reply, for it controverted the affirmative defense set up in the answer, and was not in contravention of the code declaring that any new matter, not inconsistent with the complaint, constituting a defense to the new matter in the answer may be set up in the reply. Code Proc., § 199. A reply like that we are now considering was known at common law as a new assignment and was recognized as proper pleading. But when the plaintiff in her so-called second defense set forth in effect that she never made the contract which she admitted in the first, because she had not the power or authority to make it, she assumed a position wholly inconsistent with that taken in her first defense. We think, therefore, the

reply, or at least that portion which we have desig-
nated as the second defense, should have been stricken
out on defendants' motion. But this error was in
effect cured by the action of the court in disregarding
that portion of the reply and trying the case appar-
ently upon the theory that it was entirely irrelevant
and immaterial. The motion for judgment on the
pleadings was, we think, properly denied. If the mo-
tion to strike out the reply had prevailed the plaintiff
would have been entitled, in the discretion of the
court and upon just terms, to file a new pleading. It
is only in cases where no reply whatever has been
filed to the affirmative matter in the answer that judg-
ment on the pleadings is authorized by the code, and
not where a reply has actually been filed and found to
be insufficient in law.

Plaintiff has assigned several errors on the findings
and conclusions of the court, and also on the failure
of the court to make certain other findings, but the
latter objections cannot be here considered, for the
reason that no requests for special findings appear in
the record. The plaintiff, however, predicates the
argument in her brief mainly and in fact almost wholly,
upon the proposition that her contract of sale was
void and that therefore she is not estopped by it from
claiming the relief demanded.

Several cases are cited holding that infants and
married women not *sui juris* are not estopped by their
contracts or deeds to claim property sold and conveyed
by them. Those decisions are based upon the very
just principle that it is the duty of the courts to pro-
tect that class of persons from the consequences of con-
tracts and transactions which they have no legal
capacity to make or to enter into. One case is cited
and confidently relied upon by plaintiff in support of

her contention, in which it was held that an administratrix might enjoin the laying down and opening of a public road by the county authorities over the estate of her intestate, notwithstanding the fact that she as such administratrix had previously consented that the road might be so opened. See *Rush v. McDermott*, 50 Cal. 471. The consent of the administratrix in that case was but a bare license, without consideration, and she had a perfect right, under all of the authorities, to revoke it and prevent the estate from being taken for the purposes and by the method proposed.

· But, while we are not disposed to find fault with the decisions in any of the cases cited, and while we concede that an administrator's sale without an order of the court is void and passes no title to the thing sold as against the real owner, it does not necessarily follow that an administrator or administratrix who has made a sale of property of his or her intestate without complying with the provisions of law, can successfully invoke the aid of the court of equity to annul it. The plaintiff insists that, if the principle of estoppel be applied in this case, it results in making an act valid which the law declares invalid. But we do not think so. The question is not as to the validity or invalidity of the sale, but is, can the plaintiff, after having sold this timber for a fair price to the defendants who purchased it in good faith, and after having received from them almost the whole purchase price and refused to receive the balance, and after having appropriated the amount received to the use and benefit of herself and the estate, and accounted for the money so received in her report to the court, come into a court of equity and rescind her sale and deprive the defendants of the benefits thereof simply on the ground that she had no right to make it? Upon the

plainest principles of equity and justice we think she ought not to be permitted to do so. She asks equity and yet does not propose to do equity. In other words, she proposes to avoid her own sale and reclaim a part of the property sold, without returning or offering to return a corresponding portion of the purchase price which she has received. This is therefore a case in which the well known maxim, that "he who seeks equity must do equity," ought to be applied.

An act of the legislature of Tennessee declared all sales by executors or administrators of slaves of their testator or intestate, without an order of the circuit or chancery court of the county, to be void, and yet the supreme court of that state held, in *Herron v. Marshall,* 5 Humph. 443 (42 Am. Dec. 444), that an administrator who had sold a slave contrary to the provisions of the statute was estopped from bringing an action to recover the property so sold, "upon the well-settled principle that a man shall not be permitted to set up his own illegal acts to vitiate his own contracts; in other words," says the court, "we think that the executor or administrator would, in a suit against their vendee, be estopped from saying that they had violated the statute in selling the negro."

In *Bragg v. Massie's Adm'r,* 38 Ala. 89 (79 Am. Dec. 82), the court decided that a private sale by an administrator of a slave of his intestate estopped him from recovering the slave, and that after the sale had been completed by delivery, and the slave had again come into the possession of the administrator, the latter could not interpose the invalidity of the sale as a defense in an action against him by the vendee for possession.

And in Schouler on Executors and Administrators, (2d ed.), § 360, it is said that a legal representative

DAVIS v. FORD. 119

July, 1896.]     Opinion of the Court—Anders. J.

cannot avoid his own sale or pledge though guilty of a breach of trust in making it.

The principle announced in these authorities is also fully applicable to the case at bar, and we think the court was right in holding that the plaintiff could not be heard to say, in order to avoid the sale, that she violated the statute in making it. Indeed, a court of equity, under such circumstances as are disclosed in this case, would not permit even the heirs of the intestate to recover the property sold without refunding the proceeds of the sale to the purchasers. *Valle's Heirs v. Fleming's Heirs*, 29 Mo. 152 (77 Am. Dec. 557); Freeman, Void Judicial Sales (2d ed.), § 53.

It is claimed, however, by the plaintiff that the contract under consideration was at most a mere license to cut and remove timber, and that she had a right to revoke, and, by instituting this action, did revoke it. But it is a sufficient answer to this proposition to observe that in our opinion the same principle which estops her from setting up a void sale, prevents her from taking advantage of an invalid license, as she had no more power or authority to grant a license to remove timber than she had to make a sale of it.

Objection is made to the ruling of the court as to the ownership of the note given by defendants to plaintiff, and as to the adjustment of the costs. But we think the finding that the note was owned by the bank, if material, is sustained by the evidence, and the ruling as to the costs constitutes no sufficient ground for a reversal of the judgment, as it was in accordance with the equities of the case.

We fail to find any substantial error either in the findings of fact or conclusions of the court, and the judgment is therefore affirmed at the costs of the plaintiff, and the defendants will have as much time

after the remittitur is sent down in which to cut and remove the timber to which they are entitled under the terms of the sale and the decree as they would have had if this action had not been instituted.

HOYT, C. J., and DUNBAR and GORDON, JJ., concur.

*Per Curiam.*—In the opinion heretofore filed in this case, *ante*, p. 107, it was said that " the defendants will have as much time after the remittitur is sent down in which to cut and remove the timber to which they are entitled under the terms of sale and the decree as they would have had if this action had not been instituted." And the defendants now move this court to add thereto the following: " That such time be given during the year 1897, covering the same months of the year, that these defendants would have had during the year 1895 had not this suit been instituted."

This motion is accompanied by affidavits showing that it is impracticable to cut and remove timber at or near Nookachamps creek and Blarney lake during the winter months, owing to excessive rain fall. If this fact had been brought to our attention before the opinion was prepared, the order requested would have been included therein; and as the request seems reasonable and proper under the circumstances, and as we are unable to perceive how the plaintiff can be in any wise injured by granting it at this time, the motion is hereby granted and the defendants are given the same time during the year 1897, and including the same months of the year, that they would have had during the year 1895 had not this suit been instituted.