[No. 4788.   Decided December 17, 1903.]

ANNA GROUT et al., Appellants, v. TACOMA EASTERN RAIL-
ROAD COMPANY, Respondent.[1]

MASTER AND SERVANT — RAILROADS — NEGLIGENCE — DEATH OF
BRAKEMAN — DEFECTIVE COUPLING — PLEADING — COMPLAINT — SUFFI-
CIENCY.   A complaint alleging the death of plaintiff's decedent, a
brakeman, through the negligent use of a defective pin and draw
bar in making an unusual and dangerous coupling between a
steam shovel and a construction train, states a cause of action
where it alleges that the pin was defective in being worn so
smooth that it would not hold, that upon complaint, the conductor
of the train looked at the coupling, declared it safe, and ordered
the brakeman between the cars to set the brakes, which he did,
relying upon the conductor's assurance, whereupon he was killed
owing to the giving way of the coupling through the defects afore-
said, since there is nothing in the complaint to show that the
brakeman made the coupling, or had notice of the nature thereof,
or of the defects in the pin.

PLEADINGS — LIBERAL CONSTRUCTION.   A complaint is to be liber-
ally construed upon demurrer and all reasonable intendments
made in its favor.

MASTER AND SERVANT — ASSUMPTION OF RISKS — INVESTIGATION BY
MASTER.   The doctrine of assumption of risks imposes no duty
upon the servant to make an investigation, where the defect was
sufficiently apparent to be the subject of discussion and the mas-
ter, after examination, pronounced it safe.

SAME — RAILROADS — FELLOW SERVANTS — CONDUCTOR OF TRAIN A
VICE-PRINCIPAL.   The conductor of a construction train and his
brakeman are not fellow servants, but the former is a vice-princi-
pal.

SAME — ASSUMPTION OF RISK — INSUFFICIENT NUMBER OF MEN.   A
brakeman assumes all risks from the negligence of a railroad
company in failing to furnish a sufficient number of brakemen to
operate the train.

Appeal from a judgment of the superior court for Pierce
county, Huston, J., entered May 9, 1903, upon sustaining

[1]Reported in 74 Pac. 665.

a demurrer to the complaint, dismissing an action for the death of a brakeman caused by a defective coupling and pin. Reversed.

*Govnor Teats* and *James B. Reavis,* for appellant. The judgment of the servant is subservient to the master's, where, upon discussion, the master assures him that there is no danger. *Green v. Western American Coal Co.,* 30 Wash. 87, 70 Pac. 310; *Christianson v. Pacific Bridge Co.,* 27 Wash. 582, 68 Pac. 191; *Goldthorpe v. Clark-Nickerson L. Co.,* 31 Wash. 467, 71 Pac. 1091; *Harder etc. Min. Co. v. Schmidt,* 104 Fed. 282; *Gunlach v. Schott,* 192 Ill. 509, 61 N. E. 332, 85 Am. St. 348. The servant does not assume the risks when acting under orders to do a particular act. *Dallemand v. Saalfeldt,* 175 Ill. 310, 48 L. R. A. 753, 67 Am. St. 214; *Stephens v. Hannibal etc. R. Co.,* 96 Mo. 207, 9 S. W. 589, 9 Am. St. 336; *Moline Plow Co. v. Anderson,* 19 Ill. App. 417; *Hawley v. Northern etc. R. Co.,* 82 N. Y. 370; *Illinois Steel Co. v. Shymanowski,* 162 Ill. 447, 44 N. E. 876; *Norfolk etc. R. Co. v. Ampey,* 93 Va. 108, 25 S. E. 226; *Louisville etc. R. Co. v. Utz,* 133 Ind. 265, 32 N. E. 881; *Central R. Co. v. De Bray,* 71 Ga. 406; *Long's Adm'r v. Illinois Cen. R. Co.* (Ky), 58 L. R. A. 237; *Texas etc. R. Co. v. Lewis* (Tex. Civ. App), 26 S. W. 873; *Norfolk etc. R. Co. v. Ward,* 90 Va. 687, 19 S. E. 849; 44 Am. St. 945; *Shroeder v. Chicago etc. R. Co.,* 108 Mo. 322, 18 S. W. 1094; *Patton v. Western etc. R. Co.,* 96 N. C. 455, 1 S. E. 863.

*E. M. Hayden,* for respondent, to the point that the orders of the conductor did not relieve the deceased from the assumption of known risks, cited: Note to *Dallmand v. Saalfeldt,* 48 L. R. A. 755; *Linch v. Sagamore Mfg. Co.,* 143 Mass. 206, 9 N. E. 730; *Welch v. Brainard,* 108 Mich. 38, 65 N. W. 667; *Tuttle v. Detroit etc. R. Co.,* 122 U. S.

189, 7 Sup. Ct. 1166; *Jones v. Galveston etc. R. Co.,* 11 Texas 39, 31 S. W. 706; *Bradshaw's Adm'r v. Louisville & N. R. Co.,* 14 Ky. L. 688, 21 S. W. 346; *Gulf etc. R. Co. v. Hohl* (Tex. Civ. App.), 29 S. W. 1131. Where reasonable men cannot differ as to the obvious dangers, the servant cannot rely on the master's assurance that there is none. *Johnson v. Anderson etc. L. Co.,* 31 Wash. 554, 72 Pac. 107.

FULLERTON, C. J.—This action was brought by the widow and minor children of William Grout, deceased, to recover damages for his death, caused, as they allege, by the wrongful and negligent acts of the respondent. A general demurrer to the complaint was interposed, and sustained, and this appeal is from a judgment of dismissal, entered after the appellants had elected to stand on their complaint, and had refused to plead further. The ultimate question therefore is, do the facts stated entitle the appellants to recover.

In substance it is alleged in the complaint, that the respondent is a railroad corporation operating a railroad, and that the deceased was a brakeman in its employ, and at the time of his death was engaged in that capacity on a construction train of the respondent, consisting of an engine and two flat cars equipped with air brakes; that the company, on the day Grout met with his death, had in use at a gravel pit near its main line a steam shovel, standing on a temporary side track leading from its main line down into the gravel pit; that the steam shovel stood upon a car or trucks of its own, and was moved from place to place along the respondent's line by being hitched to the construction train, and hauled as cars are ordinarily hauled; that the shovel had been, and was, equipped with a coupling and bumper similar to that in common use, but which could

not be used in the ordinary way owing to the fact that the
respondent had fastened on to the car carrying the shovel
a coal box, which extended over its end far enough to over-
lap the coupling and prevent another car from being
brought near enough to it to couple by link and pin; that,
to overcome this difficulty, the respondent had equipped the
steam shovel with a draw bar, "which has been many years
ago, and was, on said day, considered dangerous by opera-
tors of trains, and has long ago been discarded by rail-
road companies and the users of trains and steam shovels,
for the reason that experience has shown the same to be
dangerous to life and limb, and totally unfit for use;"
which draw bar was about 4½ feet in length, and extended
from the coupling on the car or truck that held the steam
shovel through the coal box a distance sufficient to permit
another car to be coupled thereto.   It is then alleged, that
on the 1st day of October, 1902, the respondent sought to
move the steam shovel from the place in which it then was
to some other point on its line, and to that end sent the
construction train, on which Grout was brakeman, to haul
the same; that, when they sought to make the coupling be-
tween the steam shovel and the construction train, it was
found that the coal box held the draw bar too high to permit
its being coupled into the coupler in the ordinary way;
whereupon the conductor of the construction train directed
that it be coupled by placing the bar on top of the coupler,
and placing a coupling pin down through the bar into the
coupling.   The complaint then proceeds as follows:

"That the said defendant carelessly and negligently
failed to have furnished with the said train or steam shovel,
a fit and safe pin for the purpose of making the coupling
of the said draw bar upon top of the said coupling, and
negligently and carelessly furnished the said train crew
with a pin, defective in this—that said pin, so furnished
and supplied by the said defendant, was worn, and the

head of the same was so worn that the pin, when the train was moved, would work down through, and the head of the same would work down through the hole in the draw bar so placed upon the said coupling.

"That when the said coupling was made, as herein set out, complaint was made that the said pin would not hold, that the said coupling was dangerous; whereupon the said conductor, who had charge of the said train, and the coupling and moving of the said steam shovel, looked at the said coupling and told the deceased that the coupling was good, that it would hold, that it was safe, and ordered the deceased between the said cars and the said steam shovel to manage the said angle-cock or cutoff, which set the brake, and ordered the said deceased to cut off the air and set the brakes at any moment he heard a shout or signal; and thereupon the said deceased, believing that the same was safe, and relying upon the assurance of the conductor, went between the car and the said shovel, as was necessary for him to do in order to work the said angle-cock or cut-off, after they had moved the said steam shovel a few feet, and while going at the rate of about three miles per hour, a shout or signal was given, which deceased took to be, under his instructions, an order to set the brakes by the said angle-cock or cut-off; whereupon the deceased, in obedience to the signal, put on the brakes of the said cars and locomotive, stopping the same; whereupon, due and owing to the momentum of the said steam shovel coming towards the said car, and due and owing to the said defective coupling, and due and owing to the said defective pin so furnished and supplied by the said defendant company and used by and under the orders and instructions of said conductor, the pin so furnished dropped down through the said slot or hole in the said draw bar, permitting the said steam shovel to come upon the said deceased, catching him between the said cars and the said coal box, so negligently and carelessly placed upon the said steam shovel by the said defendant, breaking the neck of the deceased, killing him instantly."

It is further alleged that the respondent failed to furnish

a sufficient number of brakemen to do the work required in handling a steam shovel, and that the company's negligence in that regard led to the death of Grout. There was also a general allegation to the effect that Grout was a brakeman of wide experience and long service, and was capable of earning $85.00 per month at his occupation.

The learned judge of the trial court held, and the respondent contends in this court, that, on the facts stated in the complaint, there can be no recovery, because the danger which caused the injury and death of Grout was so apparent and obvious that he must be held to have assumed the risk. Indeed, the respondent argues that the task which the appellant undertook to perform was, under the circumstances, so fraught with imminent peril that any novice would say that a man doing such a thing was taking his life in his hands, and that the danger to an experienced brakeman must have been the more obvious.

If it were true that the person killed knew at the time he obeyed the order of the conductor to go between the cars and set the brakes on a given signal, that the coupling was such as it is described to have been in the complaint, and knew further that the signal given was not a signal to put on the brakes, but did do those things in spite of his knowledge, then the argument of counsel would have much to support it, and perhaps the judgment of the trial court would properly follow. But when the complaint is examined it will be found that it is nowhere alleged that he had any such knowledge. It is true that it is alleged that he was the only brakeman, that the conductor "gave orders" for the coupling to be made in the particular manner it was made, and that when complaint was made that the coupling was dangerous the conductor "looked at" it and told the brakeman that it was safe;

and it may be that, by a process of deductive reasoning from these allegations, it can be inferred that Grout made the coupling, and must therefore have known of the dangers incurred in entering the space between the cars.

Yet it is not alleged directly that he made the coupling, nor is it alleged directly that he made the complaint that the coupling was not safe. On the contrary, it is alleged that he believed it safe, and entered upon the performance of the task imposed on him so believing and relying on the conductor's assurance that it was safe; and it is perfectly clear that all of the allegations of the complaint concerning the manner in which the train was coupled on to the shovel at the time of the accident can be true, yet the victim of the accident be entirely ignorant of the manner of that coupling, except perhaps in so far as it was directly visible to the eye. But how much would be thus visible is not shown by the complaint. A casual inspection would, of course, show that the connection between the cars was made by a draw bar, and that the draw bar was fastened to the top of the coupler instead of into the slot according to the usual manner, but it is not to be inferred from this that the defective coupling pin, the defect that directly caused the accident, was in plain view. The inference naturally flowing from the allegations made is the other way. It is alleged that the conductor of the train, whose duty it was to see that the proper appliances were used, "looked at" the coupling, and pronounced it safe. Surely, if the defect was in plain view, it cannot be that he would have failed to discover it, even though he did no more than look at it.

Unless, therefore, we are bound to construe the allegation of the complaint most strongly against the pleader, and draw and apply against his interest every inference

capable of being drawn therefrom, whether in accord with the positive allegation or not, we cannot say that it appears from the complaint that Grout had knowledge of the defects relied upon to show negligence on the part of the respondent. But we think we are neither required nor permitted to construe pleadings in this manner. By the rule of the Code, a pleading must be liberally construed with a view to substantial justice between the parties, and, giving effect to this rule, we have said that under the code practice it is no longer the rule that a pleading must be most strongly construed against the pleader. *Isaacs v. Holland,* 4 Wash. 54, 29 Pac. 976. The late territorial court, also, in *Chambers v. Hoover,* 3 Wash. T. 107, 13 Pac. 466, speaking through Mr. Justice Turner, gave the statute a similar construction, using the following language:

"The averments of this pleading are *vague* and *indefinite,* and it is defective in other respects; yet, when bolstered by the rule of liberal construction commanded by the Code, we think we discern a cause of action. A suitor is no longer to be turned out of court, if by making all reasonable intendments in his favor enough can be seized hold of in his pleadings to show that he has rights which ought to be enforced. He may be required on motion to conform his statement to the rules of good pleading, and if he refuse, may be turned out of court; but as against a demurrer, the office of which is to raise a substantial issue on the law of the case, and not on the law of practice and pleading, evidentiary facts, and even inferences from averments amounting to mere conclusions of law, will be considered in his favor."

And since that time this court has in many cases announced its adherence to the rule of a liberal construction of the pleadings, and to a natural rather than a strained construction of the language used. *King v. Ilwaco etc.*

*Nav. Co.,* 1 Wash. 127, 23 Pac. 924; *Johnson v. Leon-hard,* 1 Wash. 564, 20 Pac. 591; *Lee v. Lee,* 3 Wash. 236, 28 Pac. 355; *Rourk v. Miller,* 3 Wash. 73, 27 Pac. 1029; *Rathbone v. Frost,* 9 Wash. 162, 37 Pac. 298; *Davis v. Ford,* 15 Wash. 107, 45 Pac. 739, 46 Pac. 393; *Townsend v. Price,* 19 Wash. 415, 53 Pac. 668; *Harris v. Halverson,* 23 Wash. 779, 63 Pac. 549.  In the last case Judge White, speaking for the court, said:

"The true doctrine is that every reasonable intendment and presumption is to be made in favor of the pleading, and if substantial facts which constitute a cause of action are stated in the complaint, or can be inferred by reasonable intendment from the matters which are set forth, although the allegations of these facts are conclusions of law, or otherwise imperfect, incomplete, and defective, such insufficiency pertaining to the form rather than to the substance, the proper mode of correction is not by demurrer nor by excluding evidence at the trial, but by a motion before the trial to make the averments more definite and certain by amendment."

Applying these rules to the complaint before us, we think it going too far to say that it appears therefrom that the brakeman Grout participated in the act of coupling the cars, or that he knew of the particular defect which is alleged to have been the direct cause of the accident, especially as against the positive allegation in the complaint to the effect that he believed it to be safe and relied upon the assurance of the conductor that it was so.

But it is strenuously argued that enough did appear to put Grout, who was an experienced brakeman, upon his guard, and make it his duty to examine the coupling, and that, if he took the dangerous post after being thus warned, without examination, he must be held to have assumed the risk of injury.  Doubtless it is true that a servant who enters upon the performance of a dangerous task, after

having been warned or otherwise made aware of the danger attending upon its performance, assumes the risk of injury therefrom, even though the danger be one which the master was bound to guard against his voluntarily assuming; but this rule imposes upon the servant no duty of investigation, after he has been expressly told by the master that performance involves no risk.

A master is in law bound as a primary duty to either furnish his servant with a reasonably safe place in which to work, and reasonably safe appliances to work with, or make the servant fully acquainted with the dangers caused by his non-performance of that duty, before the servant enters the place of work or commences to use the appliances. This rule places upon the master the initiative. The duty is on him in the first instance to discover and remedy, or make known, the defects, and it requires no affirmative act of the servant to cast upon him liability for his non-performance of that duty. Hence, when a defect actually exists, and the servant is ignorant of the true conditions, or if the defect is sufficiently apparent to cause discussion between the servant and the master, and the latter informs him that it involves no unusual hazard, he is under no obligation to make an investigation of his own to hold the master responsible for an injury caused by the defect. This is the general rule, if not the rule of all of the cases. *Goldthorpe v. Clark-Nickerson Lumber Co.,* 31 Wash. 467, 71 Pac. 1091, and cases cited. In this case, therefore, though it be true that the defect causing the injury was sufficiently apparent to cause discussion, the brakeman was under no obligation to examine it after the conductor, who represented the master, had done so and pronounced it safe.

The last contention is that the brakeman and conductor

were fellow servants, and hence there could be no liability on the company, because the negligence causing the injury was the negligence of a fellow servant. It is admitted that this court, following, or at least citing with approval, the earlier decisions of the Supreme Court of the United States, has held to the contrary doctrine, but it is urged that inasmuch as that court has changed its holdings in that regard we ought not to feel bound by our own earlier cases. But this court has announced its adherence to the older rule since the federal court announced its change of opinion, not in ignorance of, but in spite of, that change of opinion. *Howe v. Northern Pac. Ry. Co.,* 30 Wash. 569, 70 Pac. 1100, 60 L. R. A. 949. The reasons why we adhere to the rule are fully stated in that case, and need not be repeated here.

The allegation of the complaint to the effect that the company failed to furnish a sufficient number of brakemen to properly perform the services required in operating the train, does not state actionable negligence. This was a matter plainly apparent to the brakeman employed, and as he continued in the service with knowledge of the fact, he assumed all the risks arising therefrom.

The judgment appealed from is reversed, and the cause remanded with instructions to reinstate the case, and give the defendant leave to answer to the merits within such time as to the trial court may seem just.

HADLEY, MOUNT, DUNBAR, and ANDERS, JJ., concur.