[No. 5389.    Decided April 15, 1905.]

JOHN SANDQUIST, *Respondent,* v. INDEPENDENT TELEPHONE COMPANY, *Appellant.*[1]

MASTER AND SERVANT—NEGLIGENCE—FAILING TO INSTRUCT—THREE MONTHS' SERVICE IN TAKING DOWN TELEPHONE POLES. Where plaintiff had been employed for three months in taking down telephone poles, was of more than average intelligence, and understood all the details of the work, the master was not guilty of negligence in failing to instruct and warn him.

SAME—INJURY TO SERVANT IN TAKING DOWN TELEPHONE POLE—INADEQUATE FORCE OF MEN. Where there was evidence that a telephone pole might have been taken down in safety with less men than were employed, but that such number would have to go about the task in a different manner, it was proper to submit

[1]Reported in 80 Pac. 539.

to the jury the question of the negligence of the defendant in taking down the pole in a particular manner with an inadequate force of men.

SAME—CONTRIBUTORY NEGLIGENCE—RUNNING AWAY TO AVOID DANGER—ERROR IN JUDGMENT. Contributory negligence is a question for the jury where a servant, assisting in taking down a telephone pole, knowing that it was about to fall, on the impulse of the moment ran away to avoid the danger, although he erred in judgment and would not have been injured if he had remained at his post.

SAME—EVIDENCE OF WARNING TO RUN—COMPETENCY ON QUESTION OF CONTRIBUTORY NEGLIGENCE. In an action for injuries sustained by a servant in taking down a telephone pole which suddenly fell, it is competent for the plaintiff to prove, on his case in chief, that the foreman warned him to run, in order to rebut an inference of contributory negligence arising from the fact that he would not have been injured if he had remained at his post.

SAME—FOREMAN GIVING ORDERS—FELLOW SERVANTS. The foreman of a gang of men engaged in taking down a telephone pole is not a fellow servant of the men, if by his orders the plaintiff was led into a place of danger or the place was rendered unsafe, where it appears that he had entire charge of the work and gave orders at every step in the process, which plaintiff was bound to obey.

Appeal from a judgment of the superior court for King county, Griffin, J., entered June 14, 1904, upon the verdict of a jury rendered in favor of the plaintiff, in an action for injuries sustained by an employee in taking down a telephone pole. Affirmed.

*Kerr & McCord* and *John P. Hartman,* for appellant.

*Benson & Hall,* for respondent.

FULLERTON, J.—On the 24th day of March, 1903, the plaintiff in this action was in the employ of the defendant, and was engaged in taking down and removing a telephone pole, at the corner of Fourth avenue and Marion street, in the city of Seattle. The pole was about forty-five feet in length, thirteen inches in diameter at the butt, and six or

seven inches in diameter at the top. In the work of taking down the pole, the plaintiff handled an appliance called a dead-man, which consisted of a round piece of timber, twelve feet in length and three and one-half inches in diameter. A steel crotch or saddle was attached to the top or end of the dead-man, to receive and hold the pole in place, in the process of raising or lowering it. Employed with the plaintiff, were the foreman of the defendant, six pikemen, and the plaintiff's brother, who handled the second dead-man. The pikes used by the pikemen consisted of poles, about twenty feet in length, with pikes or spikes in the ends.

The telephone pole was taken down or lowered in the following manner: The earth was first partially removed from the side towards which the pole was to be lowered. The pole was then raised or lifted out of the hole, and tipped over to an angle of about forty-five degrees. The dead-man was next placed under it, and the pikemen took their station on each side of the pole, some six or eight feet apart. On the occasion in question, there were three pikemen on either side. The points of the pikes were placed in the telephone pole to control its downward movement. The pole was then rocked over from the first dead-man onto the second, which was placed farther towards the top of the pole, the pole being gradually lowered onto the second dead-man by the aid of the pikemen. The first dead-man was then removed, and placed still farther towards the top of the pole, and the pole rocked back, and lowered onto it in like manner. This process was continued until the pole was brought near enough to the ground to be reached by the hands.

The pole which caused the injury complained of in this action was first placed on the dead-man handled by the plaintiff, and was then rocked over and lowered onto the

dead-man handled by his brother. The plaintiff then removed his dead-man from its first position, back towards the middle of the pole. As he did so, the pole in some manner struck the dead-man, and pressed down upon it. The foot of the dead-man slipped some two or three feet on the slanting ground, and the pole dropped lower than it otherwise would. After the dead-man slipped, as above stated, the plaintiff released his hold, and stepped to one side. Immediately thereafter he ran, apparently to avoid injury in case the pole should fall. The pole got beyond the control of the pikemen, keeled over on the dead-man, and fell to the ground, striking the plaintiff and seriously injuring his foot and leg. To recover damages for the injury so received, this action was brought. · The plaintiff had judgment below, and the defendant appeals.

The following grounds of negligence were charged in the complaint: (1) That the respondent was inexperienced in the work of taking down poles, that the appellant's foreman had knowledge of such inexperience, and failed to give him proper instructions as to the avoidance of danger; (2) insufficiency of men employed to assist the respondent in the work of taking down the pole; (3) insufficiency of pikes supplied; (4) directing the respondent to place the dead-man under the pole in an extremely dangerous manner, without taking proper precautions for his safety; and (5) negligently and carelessly suffering the pole to fall, whereby the respondent was injured.

We are inclined to agree with the appellant that there was no proof to sustain the first and third charges of negligence, as above set forth. There was a sufficient supply of pikes for all of the men employed in the work of taking down the pole, and the respondent had been employed in and about the same kind of work for a period of about three months. His testimony shows him to be a

man of more than average intelligence, and he fully understood all the details of the work in which he was employed. He had received sufficient instructions, if any were necessary.

The appellant further contends that the second ground of negligence is not actionable, and cites, *Grout v. Tacoma Eastern R. Co.*, 33 Wash. 524, 74 Pac. 665. This is, in a measure, true. It appears in this case that the pole in question might have been taken down in entire safety with less men than were actually employed, but the lesser number would have to go about the task in a different manner. So while the employment of an inadequate force of men would not, of itself, be negligence, the act of taking down the pole in a particular way with an inadequate force might be gross negligence. It cannot be said, as a matter of law, that the falling of this pole was an accident which the exercise of ordinary prudence would not have guarded against. Nor is it claimed that the falling of the pole was caused by the negligence of the respondent. All that is claimed against him is that he would have escaped without injury had he remained at his post. We think there was testimony tending to show that the falling of the pole was the result of negligence on the part of the defendant, and that the court properly submitted that question to the jury.

· Was the respondent guilty of contributory negligence? It is not sufficient to say, or to show, that he would have received no injury had he remained by his dead-man. He was placed in a dangerous position through what the jury had a right to find was negligence on the part of the appellant. A telephone pole, weighing some six or seven hundred pounds, was suspended in mid air above him, beyond the control of the pikemen. He knew it would fall, but had not the time to consider when or where. On the impulse of the moment, he took what seemed to him the

safest course, though he may have erred in judgment. His position was similar to one who jumps from a moving train to avoid a collision which seems imminent. The question of his contributory negligence was one for the jury. The questions of the negligence of the appellant, the negligence of fellow servants, and the negligence of the respondent himself, were submitted to the jury, there is sufficient testimony to sustain their finding, and their verdict is binding upon this court.

We will now pass to a consideration of the other assignments of error. We have carefully examined the instructions given and the requests refused, and think that the law applicable to the case was fully and fairly stated to the jury. Over the objection of the appellant, the court permitted the respondent to testify that the foreman warned him to run at the time he left his dead-man, immediately before the accident. If the act of the foreman in this regard were relied on to establish negligence on the part of the appellant, the objection might be well taken. But we think the testimony was admissible on another ground. It was incumbent upon the respondent to prove negligence on the part of the appellant, and a want of negligence on his own part. While the burden is not ordinarily on the plaintiff to prove the absence of contributory negligence, as a part of his main case, yet, it behooves him not to prove contributory negligence affirmatively. And if he does prove facts from which contributory negligence might be inferred, as a part of his main case, he has a right to rebut this inference in his main case. Otherwise a nonsuit would cut him off, so that he would never have the opportunity. In determining whether or not the respondent was guilty of contributory negligence, under the circumstances, the warning given by the foreman or others, in the moment of peril, was competent evidence.

It is next claimed that the appellant's foreman was a fellow servant of the respondent, but we think the facts ·do not justify this contention. It appears from the testimony that the foreman was selected by the appellant, and was given the entire charge and supervision of the work about which the respondent and the other employees were engaged; and that, at the time of the injury, the foreman stood at the foot of the pole, and gave orders at every step in the process of taking it down. These orders the respondent was bound to obey, and if, by them, he was led into a place of danger, or if thereby his place of work was rendered unsafe, the employer is responsible for an injury occurring because thereof. The case falls within the rule of *McDonough v. Great Northern R. Co.*, 15 Wash. 244, 46 Pac. 334, where we said:

"We think that in reason and upon the authority of the better considered cases, it must be held that it is a positive duty which the master owes to an employee not only to provide him with a reasonably safe place in which to work—so far as the nature of the work undertaken and the exigencies of the case will permit the same to be made reasonably safe—but also to observe such care as will not expose the employee to perils and dangers which may be guarded against by reasonable care and diligence; and where the performance of this positive duty is by the master entrusted to another, his failure to perform is the failure of the master. The discharge of this duty was in the case at bar entrusted by appellant to its foreman, Nolan. He was the superintending officer at the place where the work was being performed, with full power and control over the plaintiff and all others connected in the active discharge of the work. Under the circumstances we think it follows that his negligence was the negligence of the company."

As we find no error in the record, the judgment will stand affirmed.

MOUNT, C. J., HADLEY, and DUNBAR, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took no part.