[October Term, 1928]

## POSTON v. DELFELDER
(No. 1486; October 1, 1928; 270 Pac. 1068)
(Rehearing denied Jan. 3rd, 1929)

164

*William E. Mullen* and *Corthell, McCullough & Corthell,* for plaintiff in error.

*E. E. Enterline* and *E. Paul Bacheller,* for defendant in error.

168

*Per Curiam:*

This case involves proceedings under Sections 6958-6966, C. S. 1920.

Section 6958 provides that:

"When a person who is bound by contract in writing to convey any real estate, dies before making the conveyance, and in all cases when such decedent, if living, might be compelled to make such conveyance, the court or judge may make an order authorizing and directing his executor or administrator to convey such real estate to the person entitled thereto."

The other sections provide, among other things, for the filing of a verified petition by any person claiming to be

entitled to a conveyance, "setting forth the facts upon which the claim is predicated;" for the appointment of a time and place for hearing the petition; for a hearing at which all persons interested in the estate may appear and contest the petition by filing objections in writing; for an order authorizing and directing the executor or administrator to execute a conveyance of the real estate if, after a full hearing upon the petition and objections, the court or judge is satisfied that the petitioner is entitled thereto; and for the execution of the conveyance by the executor or administrator according to the directions of the order. Section 6963 provides that, if the right of the petitioner is found to be doubtful, the court or judge must dismiss the petition without prejudice to the right of the petitioner to proceed by action.

In the matter of the estate of Jacob A. Delfelder, deceased, there was filed, June 27, 1921, a "petition for conveyance of real property" by Lon J. Poston, petitioner, against Evelyn M. Delfelder, executrix. The petition, so far as material for the purposes of this case, was as follows:

"Comes now the above named petitioner and represents to the Court and gives the Court to understand that prior to the death of the said Jacob A. Delfelder and on the 24th day of March, 1921, said Jacob A. Delfelder did by and through his authorized agent, J. L. Marquis, of Fremont County, Wyoming, negotiate as (a) sale to this Petitioner of certain sheep, horses and sheep camp equipment together with certain range lands herein described for the sum of One Hundred and Forty Thousand Dollars ($140,000.00); that said Petitioner on the 26th day of March, 1921, paid to said J. L. Marquis as part payment upon said purchase price of said property, the sum of Ten Thousand Dollars ($10,000.00), which was by him paid into the American National Bank of Cheyenne, Wyoming, and by it credited upon the mortgage lien held by said Bank upon said property in full accordance with the instructions of said Jacob A. Delfelder relative to the disposition of the monies received and to be received for

said purchase price of said property; that thereafter this Petitioner took possession of all of said property and on the 9th day of April, 1921, paid into said Bank the balance of said purchase price, to-wit, One Hundred and Thirty Thousand Dollars, which was by said Bank credited upon said mortgage lien:

"Said range lands and real property are described as follows: (here follows a description of some 2480 acres of so-called range lands; of numerous leases from the Interior Department of Indian lands on the Shoshoni Indian Reservation, and of state leases of state school lands).

"That by the terms of said purchase said Range Lands were to be conveyed to this Petitioner in fee, and all of said Leases were to be duly assigned to him upon the payment in full by him of said purchase price therefor, but before said payment was completed the said Jacob A. Delfelder died upon the 28th day of March, 1921, that the last will of said decedent was on the 10th day of May, 1921, admitted to probate and the above named Evelyn M. Delfelder was appointed and has duly qualified and is acting as the sole Executrix of said Estate and is under the provisions of said will the sole beneficiary thereunder.

"WHEREFORE PETITIONER prays the Court that said Executrix be authorized and required to convey said Range Lands to him in fee free from all encumbrance whatsoever, and to assign by good assignment thereof the said Leases and the lands so leased, and that an order confirming the sale of said personal property be made on record in this court."

This petition was sworn to by the petitioner on June 13, 1921. Following his affidavit is the following:

"Comes now Evelyn M. Delfelder, executrix of the Estate of Jacob A. Delfelder, deceased, and does hereby acknowledge service upon her of a copy of the above named and foregoing Petition by L. J. Poston subscribed on this 13th day of June, 1921; that she has read said petition and knows and understands the contents thereof; that she has made an investigation of the matters therein set forth and that she knows of her own knowledge that the matters and facts therein set forth are true; that she has no objection, either as said Executrix or as the sole

beneficiary of said Estate, to the granting of the prayer of said petition, save and except that the oil and mineral rights in said lands should be reserved to said Estate.''

This was signed by Evelyn M. Delfelder as ''Executrix and sole beneficiary of the estate of Jacob A. Delfelder, deceased,'' and sworn to by her June 13, 1921.

September 2, 1921, the petition came on regularly for hearing and an order was then made and entered authorizing the executrix to convey to the petitioner the range lands, excepting the oil and mineral rights, and to assign to him the leases of Indian and State lands.

April 22, 1926, nearly five years after the making of the above order, Evelyn M. Delfelder filed two motions to set aside the order and all proceedings and convey-ances thereunder. She made one motion as executrix and the other as sole legatee and beneficiary under the will. Each motion alleged on several grounds that the order of September 2, 1921, was void for want for juris-diction. The court, on November 8, 1926, granted the motions to the extent of declaring void and vacating the order of September 2, 1921. This proceeding in error is based on Poston's exception to the order of November 8, 1926.

On the hearing of the motion to vacate, the grounds relied on and considered presented the single question— whether the attacked order of September 2, 1921, was void on its face because the petition therefor failed to allege a written contract. The petition and the order sought to be vacated were the only evidence introduced. These, we may assume, constituted the record, corre-sponding to the judgment roll in a suit at law or in equity. Freeman on Judg., (5th Ed.) Sec. 186; Boulter v. Cook, 32 Wyo. 461, 474, 234 Pac. 1101, 236 Pac. 245. It is imma-terial whether the proceeding to vacate the former order of the court be called a direct or a collateral attack. It was not an attack by appeal nor by the statutory method

for vacation of judgments after the term. It was contended that the former order for conveyance of real property was void for want of jurisdiction of the subject matter, and that the want of jurisdiction appeared from the face of the record. The right to have the order vacated depended on the principles of law that govern when a judgment is attacked for want of jurisdiction in a proceeding that is clearly collateral. North Laramie Land Co. v. Hoffman, 30 Wyo. 238, 247, 219 Pac. 561.

Probate Courts, in the absence of express statutory authority, have no jurisdiction to decree specific performance. Such authority is conferred on probate courts by the statutes of many states. Pomeroy on Specific Performance (3rd Ed.) Sec. 497, where it is said that "the proceeding (in the Probate Court) is suited to cases of ordinary contracts where there is no real controversy as to the obligations of the respective parties," etc. That view seems to be consistent with the statutory provision (Sec. 6963, supra) that in cases where the petitioner's right is found to be doubtful, his petition should be dismissed without prejudice to his right to proceed by action. See, In re Bank's Estate, (Mont.) 260 Pac. 128. Under statutes similar to ours, the jurisdiction of the Probate Court to grant specific performance is limited to cases where the decedent was bound by a contract in writing. Cory v. Hyde, 49 Calif. 469; Bullerdick v. Hermsmeyer, 32 Mont. 541, 81 Pac. 334; Cone v. Blair, (Okla.) 270, 257 Pac. 782; McQuitty v. Wilhite, 218 Mo. 586, 117 S. W. 730, 131.

The defendant in error contends not only that the jurisdiction of the Probate court to grant specific performance is limited to cases in which there is a contract in writing, but that the fact that there is a written contract must affirmatively appear from the face of the record, and that otherwise the judgment is void even on collateral attack. In support of this contention she relies most strongly on Cory v. Hyde and Bullerdick v. Hermsmeyer,

supra, the former decided in 1875 by the Supreme Court of California, the state from which we took a large part of our probate code, including the provisions for specific performance, and the latter by the Supreme Court of Montana under similar statutes. The California case was decided on an appeal from the order for conveyance, and, therefore, did not involve any question of the validity of the order on collateral attack. The court said, however, that the averment of the writing was necessary to give the Probate Court jurisdiction. In Bullerdick v. Hermsmeyer, supra, the point was decided on a collateral attack, and that case is, to say the least, strong authority in support of defendant in error's contention.

The plaintiff in error contends that in view of our statutes and previous decisions, the rule of Bullerdick v. Hermsmeyer should not apply in this state. Our attention is directed to Section 6730, C. S. 1920, which provides, among other things, that, "orders and decrees made by the court, or judge thereof, in probate proceedings, need not recite the existence of facts, or the performance of acts, upon which the jurisdiction of the court or judge may depend, but it shall only be necessary that they contain the matters ordered or adjudged," except as otherwise provided; to Lethbridge v. Lauder, 13 Wyo. 9, 17-18, 76 Pac. 682 (followed in Rice v. Tilton, 14 Wyo. 101, 111, 82 Pac. 577) where it was said, in view of Section 6730, supra, that there was no reason why the presumption that applies, upon collateral attack, as to the regularity of proceedings of the District Court in other cases, should not apply with equal force to its proceedings in probate matters; to Section 6738, C. S. 1920 (amended Laws 1921,Ch. 144) providing that, except as otherwise provided in the probate code, the provisions of the code of civil procedure are applicable to and constitute rules of practice in proceedings mentioned in the probate code, and to Sowers v. King, 32 Wyo. 167, 238 Pac. 540, in which, in view of Section 6738, supra, we felt justified in refusing to follow

a California decision on a question of pleading. Plaintiff in error argues that under the general principle approved in Lethbridge v. Lauder and Rice v. Tilton, supra, the order of September 2, 1921, cannot be held void on collateral attack unless the want of jurisdiction (absence of a written contract) appears affirmatively from the record; that the petition on which the order was made fails to show affirmatively that there was no written contract; that if the petition be interpreted, as it should be, by the rules that would be applied in the consideration of a petition for specific performance in a court of equity, the allegation of a sale by an authorized agent would be a sufficient allegation of a binding, that is, written, contract, and that the petition, so construed, would not only fail to show want of jurisdiction, but would affirmatively show jurisdiction, of the subject matter. It may be that these contentions are shown to be without merit by the reasons supporting the decision of Cory v. Hyde and Bullerdick v. Hermsmeyer, supra. That question we deem it unnecessary to decide in this case, for there are reasons presently to be noticed that cause us to hold that the defendant in error had no right to claim on a collateral attack that the order of September 2, 1921, was void for want of jurisdiction.

We have set forth the contentions of the parties on the question of jurisdiction for the purpose principally of calling the attention of the bench and bar to the alleged defect in the proceedings—a defect that in the present case probably would have been fatal on an appeal from the order, and which in some future case might render the order void even on collateral attack.

The plaintiff in error contends that, whether or not the order of September 2, 1921, was void, it should not have been vacated on the motion of the defendant in error. We think this contention must be sustained.

The petition for conveyance of the property contained not only the application of the plaintiff in error, the al-

leged purchaser of the property, but had appended to it, apparently as a part of the petition, the affidavit of the defendant in error in which she represented to the court that she had investigated the matters presented by the petition; knew of her own knowledge that the matters and facts set forth in the petition were true, and that she had no objection, either as executrix or as sole beneficiary of the estate, to the granting of the prayer of the petition, except as to the oil and mineral rights. She practically joined in the prayer of the petition, invoking the jurisdiction of the court. It was probably her representations, as much as the representations in the petition of the plaintiff in error, that induced the court to grant the prayer of the petition. After a period of nearly five years, and without any claim of fraud, duress, accident or mistake, she was in no position to seek to have the order vacated.

It has been said often, and by this court, that jurisdiction of the subject matter cannot be conferred by consent. Freeman on Judgments (5th. ed.) Sec. 1349. In Church v. Quiner, 31 Wyo. 222, 227, 224 Pac. 1073, we said that acts of the Probate Court without jurisdiction of the subject matter have no binding effect "even on those who invoked its authority." That was a proceeding in error from the void order, and involved no question of estoppel, or the like.

In a note, 3 A. L. R. 535, it is stated as a general rule that:

"The party at whose instance a judgment is rendered is not entitled, in a collateral proceeding, to contend that the judgment is invalid. Neither want of jurisdiction, defect of procedure, or any other ground of invalidity can be availed of collaterally, by the party who is responsible for the existence of the judgment."

There are cited in support of the rule many cases, among them Bledsoe v. Seaman, 77 Kan. 679, 95 Pac. 576, where the rule is explained thus:

"A party cannot invoke the jurisdiction and power of a court for the purpose of securing important rights from his adversary through its judgment, and, after having obtained the relief desired, repudiate the action of the court on the ground that it was without jurisdiction. The question whether the court had jurisdiction, either of the subject-matter of the action or of the parties, is not important in such cases. Parties are barred from such conduct, not because the judgment obtained is conclusive as an adjudication, but for the reason that such a practice cannot be tolerated. People who invoke the action of a court, and, through negligence or falsehood, mislead the court as to the existence of the facts upon which its jurisdiction depends, and obtain a judgment for relief, will not afterward be heard to deny the validity of such judgment."

While, in invoking the above rule, it is often said that the party at whose instance a judgment is entered is estopped to assert its invalidity, the principle on which the decisions rest is not technically the doctrine of estoppel. Freeman on Judgments (5th Ed.) Sec. 320.

There are other cases that seem to have a bearing on the case at bar. They, for the most part, are cases involving the effect of conveyances under void orders of probate courts.

In Ryan v. Maxey, 43 Texas 192, a minor acting by his guardian, and two married women, joined by their husbands, were parties to a proceeding instituted by one of the married women for partition of real estate in a guardianship, and all the parties interested were active agents in procuring a sale to be made. It was contended in a suit by them to recover the land that the court had no jurisdiction to make the order, as one of the minors whose estate was being administered had died before the order was made. It was held unnecessary to determine whether the court had jurisdiction or not, as under the facts the plaintiffs were estopped from enforcing their claim to the land.

In Duryea v. Mackey, 151 N. Y. 204, 45 N. E. 458, a mortgage by a temporary administrator was void for want of jurisdiction of the surrogate to authorize it. The mortgage, however, was held valid in a court of equity not only as against the administrator who made the mortgage and received the money on it, but also as against a remainderman who expressly consented to the mortgage.

In Davis v. Ford, 15 Wash. 107, 117, 45 Pac. 739, 46 Pac. 393, it was said that, while a sale by an administratrix without an order of court is void and passes no title as against the real owner, it does not necessarily follow that the administratrix who has made the sale of property of her intestate without complying with the provisions of law can successfully invoke the aid of a court of equity to annul it.

And see, Wells v. Steckelberg, 52 Neb. 597, 72 N. W. 865; Cope v. Blount, 99 Tex. 431, 90 S. W. 868; Bliss v. Tidrick, 25 S. D. 533, 127 N. W. 852.

These cases, also, do not always present a clear case of estoppel in its ordinary signification. Ions v. Harbison, 112 Calif. 260, 44 Pac. 572, and cases there cited. In Powers v. Scharling, 76 Kan. 855, 92 Pac. 1099, it was said to be unimportant whether the principle applied be described as estoppel, quasi-estoppel, waiver, ratification, election, or as a requirement of consistency in conduct.

While none of the foregoing cases was decided on facts precisely like those in the case at bar, they serve to illustrate the reluctance of the courts to disturb even a void order, or conveyances thereunder, at the request of one who has no equitable right to complain. It is true that in the case at bar, the plaintiff in error had paid for the property before the conveyance was applied for, and that the purchase money was paid to a mortgagee instead of the executrix. We cannot see that those circumstances afford any substantial ground for holding that the estate has not received the benefit of the transaction. No reason

is suggested why the mortgagee was not the proper recipient of the proceeds of the sale of the mortgaged property. While the defendant in error may not have induced the plaintiff in error to pay the money, she, both as executrix and sole beneficiary, approved of the payment, and the fact that payment was made before, instead of after, the order for conveyance seems immaterial.

It is contended, however, that though the defendant in error, as sole legatee and devisee, is precluded from attacking an order which she induced the court to make, she may still have that right as executrix, representing the creditors. We are not cited to any authority holding that the creditors of an estate may not be bound by the estoppel of the executrix. That point we do not decide, though we may say that the cases examined that seem to bear on the point indicate that a creditor may be estopped by acts of the executor done in good faith for the estate in a transaction by which the estate received a benefit. While it is said 'in defendant in error's brief that there are many thousands of dollars of unsatisfied claims against the estate, the record before us does not show that fact, or that there are any creditors whatever. If we should assume that there are unsatisfied creditors whose rights were not affected by the act of the executrix in inducing the court to order the conveyance, we think, in the circumstances, on her application on behalf of the creditors to vacate the order, she ought to make some showing that they have been injuriously affected by the transaction which she seeks to annul. ·

The order vacating the order of September 2, 1921. will be reversed.

ON PETITION FOR REHEARING

*Per Curiam:*

The brief in support of the petition for rehearing calls our attention to a matter that seems to require some elaboration of our former opinion (270 Pac. 1068).

In our former opinion, after stating that, on the hearing of the motion to vacate, the defendant in error contended that the order sought to be vacated was void because the record showed a want of jurisdiction of the subject-matter, we said that it was immaterial whether the motion to vacate be called a direct or a collateral attack. Nevertheless, we applied a principle which, according to the cited authorities, precludes a party at whose instance a judgment is rendered from contending *in a collateral proceeding* that the judgment is invalid. The defendant in error now earnestly contends that the motion to vacate was a direct and not a collateral attack on the challenged order (citing People v. Green, 74 Calif. 400, 16 Pac. 197; Jotter v. Marven, 63 Colo. 222, 165 Pac. 269, and many other cases), and, therefore, that the principle mentioned above was erroneously applied in the case at bar.

There is considerable confusion in the decisions that undertake to prescribe a test for distinguishing between direct and collateral attacks on judgments. Some of the authorities seem to hold that a direct attack is an attempt to avoid or correct the judgment in some manner provided by law, as by appeal, error, or some motion authorized by statute, and that an attack in any other manner is collateral. Van Fleet on Collateral Attack, Secs. 2-3. In some of the cases a distinction is drawn between indirect and collateral attacks, and an appeal is considered the only method of direct, as distinguished from indirect, attack. Eichoff v. Eichoff, 107 Calif. 42, 48, 40 Pac. 24. Often it is said that the attack is direct if it be for the express (and, by some authorities, the sole) purpose of annulling or setting aside the judgment in the court that

rendered it. Morrill v. Morrill, 20 Ore. 96, 25 Pac. 362; Gardner v. Howard, 197 Ky. 615, 247 S. W. 933. The distinction between direct and collateral attacks is made for the purpose of deciding what effect is to be given to the recitals of the record and to certain presumptions of regularity, and where the ground of the attack is that the record shows a want of power to render the judgment, there would ordinarily be no reason for inquiring as to the nature of the attack. In the case at bar, the defendant in error, in moving for vacation of the order, relied upon the record which, in our opinion, showed that the attacked order was made at her instance.

The rule which we think precluded the defendant in error from contending that the attacked order was invalid is in the nature of an estoppel. In view of the reasons for the rule, and of the somewhat confused state of the authorities upon the subject of direct and collateral attack, it might be reasonable to say that the term ''collateral proceeding,'' as used in the statement of the rule, means a proceeding other than by appeal or by motion during the term. But we did not, and do not now, decide whether the motion to vacate in the case at bar should be called a direct or a collateral attack. We were of opinion, whatever the attack be called, that the rights of the parties ought to be determined on the principles that would apply in a case of a collateral attack. We adhere to that view, which may, perhaps, be a little clearer if we state briefly some of the facts that were either not stated or not emphasized in the former opinion.

The attacked order was an authorization or direction for the doing of a specific thing—for the making of certain conveyances of lands and leases. Apparently long before any question was raised as to the validity of the order, it had been carried out. When the conveyances were made the record does not show, but we are justified in assuming that they were made within a reasonable time

after the order therefor, and several years before the filing of the motions to vacate. Nearly five years after the order was made, the executrix and sole beneficiary, who, as we held, had induced the court to make it, evidently decided that she should have returned to her the lands and leases. She filed her motions to vacate and set aside the order and all proceedings and conveyances made thereunder. The order for the conveyances remained, of course, of record, but there was nothing further to be done under it. It had become, so to speak, *functus officio.* In the circumstances, we are clearly of opinion that the motion to vacate it years after its mandate had been carried out, in furtherance of the evident purpose to set aside the conveyances and regain the lands, if not properly called a collateral proceeding, ought to be governed by the same principles that would be applicable to such a proceeding.

*Rehearing denied.*